**REITZ, Admr., Appellant,**

v.

**HOWLETT et al.; Chuparkoff et al., Appellees.**\*

[Cite as *Reitz v. Howlett* (1995), 106 Ohio App.3d 409.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16818.

Decided Sept. 20, 1995.

---

\* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1525, 660 N.E.2d 745.

410

412

*Buckingham, Doolittle & Burroughs, David P. Bertsch* and *Frank G. Mazgaj,* for appellant.

*Amer, Cunningham & Brennan, Richard Cunningham* and *Marie Wheeler;* and *Barry M. Ward,* for appellees.

REECE, Presiding Judge.

Appellant, William Reitz, appeals from the judgment of the trial court rendered in favor of appellees, Ted Chuparkoff, d.b.a. the Belmont Grille, and James Dean, Jr., d.b.a. Jimmy Dean's. We affirm.

## I

Leon Howlett frequented the Belmont Grille, a tavern in the city of Akron owned by Ted Chuparkoff. Howlett was also a patron of a neighboring tavern, Jimmy Dean's. On June 15, 1990, Howlett arrived at the Belmont early that Friday morning where he began drinking his favorite beer, Budweiser. That day, he drank interchangeably at the Belmont and at Jimmy Dean's. Howlett was last seen leaving the bars at 12:30 a.m., Saturday, June 16, 1990. At approximately 2:30 a.m., Howlett, while driving the wrong way on Interstate 76, crashed his car into a car driven by Carey Reitz, killing her. Howlett's wife discovered him a few hours later walking along a road. Howlett was convicted of criminal charges for his actions.

William Reitz, Carey's father, sued Howlett, Ted Chuparkoff, and James Dean, Jr., the owner of Jimmy Dean's. Reitz premised his lawsuit on negligence, with dramshop tort liability providing the specific basis for Reitz's suit against the two bars. The case was tried to a jury, which found that Howlett was liable, but found that Chuparkoff and Dean were not liable. The jury awarded damages in the amount of $2,500,000. Reitz timely appeals.

## II

Reitz asserts seven assignments of error. He contends that (1) the trial court improperly instructed the jury about the taverns' liability under R.C. 4399.18 for having violated R.C. 4301.22(C); (2) the trial court improperly instructed the jury on the meaning of a "sale" of an intoxicating beverage; (3) the trial court improperly instructed the jury on proximate causation; (4) the trial court improperly instructed the jury on superseding causation; (5) the trial court mistakenly sent a videotaped transcript of an audio recording into the jury room during deliberations; (6) the trial court impermissibly gave each defendant the same number of peremptory challenges as the plaintiff; and (7) the trial court incorrectly excluded from evidence a witness's criminal record. In his single cross-assignment of error, Chuparkoff contends that the trial court improperly denied his motion for a directed verdict.

## A

The first four assignments of error argue that the trial court improperly instructed the jury. In order to preserve the assertion of error in a jury instruction on appeal, the appellant must object to the jury instruction on the record at trial. *Kelley v. Cairns & Bros., Inc.* (1993), 89 Ohio App.3d 598, 613, 626 N.E.2d 986, 995–996. In this case, Reitz preserved each assigned error by proper objection.

In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500, 506–507. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph six of the syllabus; *Wozniak, supra.* It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171.

In his first assignment of error, Reitz argues that the trial court improperly instructed the jury about the taverns' liability under R.C. 4399.18 for having violated R.C. 4301.22(C).

R.C. 4399.18 provides:

"A person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

"(A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:

" * * *

"(2) A person in violation of division (C) of section 4301.22 of the Revised Code[.]"

R.C. 4301.22(C) provides in part that "[n]o intoxicating liquor shall be sold to any individual who habitually drinks intoxicating liquor to excess." Reitz argues that the trial court failed to give an instruction on R.C. 4301.22(C) despite the nature of the evidence supporting such instruction. According to Reitz, the failure to give the instruction amounted to the trial court granting a directed verdict in favor of the taverns and their owners as to liability under R.C. 4301.22(C).

A review of the record indicates that the evidence did support an instruction about R.C. 4301.22(C). Testimony indicated that Howlett was a regular patron of the taverns and that he consumed alcohol on those occasions. Chuparkoff, his wife Margaret, and James Dean, Sr., as well as other patrons, testified that Howlett was at both bars on June 15 and that he drank alcohol at both places. Finally, Howlett's wife, Dakota, testified that Howlett was an alcoholic, and that she had picked him up several times from the Belmont when he was inebriated.

She also testified that she saw him at both taverns on June 15 and that he appeared drunk at both places.

■ The trial court during its instruction to the jury stated that Reitz alleged the defendants violated R.C. 4301.22(C) by selling "intoxicating liquor to Leon Howlett who habitually drinks intoxicating liquor to excess." Furthermore, the trial court instructed that "[i]n order to prevail against these defendants, the plaintiff must meet certain statutory requirements * * * [t]hat the defendants or their employees sold intoxicating liquor or beer to the intoxicated individual, Leon Howlett, who defendant or his employees knew was noticeably intoxicated or habitually drinks intoxicating liquor to excess." The trial court did not elaborate on the meaning of "habitually drinks intoxicating liquor to excess."

Specific interrogatories were also submitted for the jury's consideration. Interrogatory number four asked, "Do you find that any employee of the Belmont Bar & Grille sold an intoxicating beverage to Leon Howlett with the knowledge that Leon Howlett habitually drank intoxicating liquor to excess? And, was this sale a proximate cause of Leon Howlett's intoxication at the time of the collision on June 16, 1990?" The jury answered "no" to this interrogatory. Interrogatory number six asked the jury the same question in relation to Jimmy Dean's. The jury also answered "no."

In this case, the trial court did tell the jury that Reitz alleged a violation of R.C. 4301.22(C) and that in accordance with this allegation Reitz could prevail if he proved that Howlett "habitually drinks intoxicating liquor to excess." Thus, the trial court properly instructed the jury about R.C. 4301.22(C).

■■ Assuming that this instruction somehow constituted error, such error was harmless. Jury interrogatories can render as harmless errors contained in jury instructions. Cf. *Dubecky v. Horvitz Co.* (1990), 64 Ohio App.3d 726, 738, 582 N.E.2d 1087, 1094–1095. The jury interrogatories in this case specifically directed the jury to consider whether Howlett was a person who habitually drank intoxicating liquor to excess. Because the jury was so directed, any error in the instruction was rendered harmless by the specific interrogatories.

■ In his second assignment of error, Reitz contends that the trial court incorrectly instructed the jury on the meaning of "sale" as contained in R.C. 4301.22. R.C. 4301.22(B) states that no sales shall be made to an intoxicated person and R.C. 4301.22(C) states that "[n]o intoxicating liquor shall be sold to any individual who habitually drinks intoxicating liquor to excess."

Concerning these terms, the trial court instructed the jury as follows:

"If plaintiff does not prove that the defendant sold Leon Howlett an intoxicating beverage or only proved that the defendant served an alcoholic drink to Leon

Howlett but his drink was paid for by another person, then you will find that the defendant did not sell an intoxicating beverage to Leon Howlett."

Regarding the definition of "sale," the Supreme Court of Ohio has stated in dicta that a commercial provider of alcohol could be held liable where the sale is made to one patron with knowledge that the drink was for another person who was intoxicated. *Great Cent. Ins. Co. v. Tobias* (1988), 37 Ohio St.3d 127, 129, 524 N.E.2d 168, 170–171. The Supreme Court, however, did not pass upon this issue. Assuming that the trial court incorrectly stated the definition of "sale," any error which occurred is harmless due to the specific nature of the jury interrogatories.

Interrogatories three and five asked the jury to find whether any employee of the Belmont Grille or Jimmy Dean's knowingly sold an intoxicating beverage to Howlett when he was noticeably intoxicated. Interrogatories four and six asked whether any employee of each tavern sold Howlett alcoholic beverages with the knowledge that Howlett habitually drank to excess. The jury responded negatively. From the interrogatories, the jury reasonably determined that neither tavern knew that Howlett was intoxicated or that he was a person who habitually drank to excess. If the jury determined that the taverns' employees did not know that Howlett fit either criterion, then it would not matter whether he bought the drinks directly, or whether a third party purchased the drinks for him. Thus, the error was harmless.

In his third assignment of error, Reitz contends that the trial court incorrectly instructed the jury on the issue of proximate cause.

R.C. 4399.18(B) states that the plaintiff must prove that the "person's intoxication proximately caused the personal injury, death, or property damage." According to the Supreme Court of Ohio, the plaintiff must demonstrate that the permit holder knowingly sold an intoxicating beverage to a noticeably intoxicated person, or a person who habitually drinks intoxicating beverages to excess, whose intoxication proximately caused the damages sought. *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 363, 533 N.E.2d 732, 736–737. See, also, *Holley v. Beverage King Co.* (1989), 61 Ohio App.3d 113, 116, 572 N.E.2d 189, 191–192.

Reitz argues that the trial court improperly instructed the jury with this instruction: "If such sale was made, was this sale a proximate cause of the intoxication of Leon Howlett." Reitz contends that this instruction did not agree with the *Gressman* standard.

When the trial court began to instruct the jury, the court delineated the elements of the plaintiff's cause of action as follows:

"In order to prevail against these defendants, the plaintiff must meet certain statutory requirements. Now, the elements that must be proven to show liability

here are that you may find for the plaintiff if you find by a greater weight of the evidence the following elements. That the decedent's death was caused by the negligent acts of the intoxicated person, that person being Leon Howlett. That the defendants or their employees sold intoxicating liquor or. beer to the intoxicated individual, Leon Howlett, who the defendant or his employees knew was noticeably intoxicated or habitually drinks intoxicating liquor to excess. *And that the intoxication of the intoxicated person, Leon Howlett, proximately caused the death of Carey Reitz.*" (Emphasis added.)

Clearly, the trial court properly established what Reitz had to prove, including proximate cause. Furthermore, this instruction agreed with the standard of proximate cause enunciated in *Gressman.*

In light of the foregoing instruction, we determine that the challenged instruction constituted harmless error. Assuming that this instruction comported with *Gressman,* the jury could still have determined that Howlett alone was liable. The record reveals evidence which supported the defendants' position that they did not know Howlett was intoxicated or that he habitually drank to excess. Given this evidence coupled with the trial court's initial instruction, the jury could have reasonably determined that the defendants did not violate their statutory duty and thus did not commit negligence. In other words, the particular facts of this case indicate that the jury could have reached the conclusion that Howlett alone committed tortious acts. In fact, the jury reached this conclusion. Thus, we cannot conclude that the jury's verdict was the product of confusion caused by the challenged instruction.

 In his fourth assignment of error, Reitz contends that the trial court improperly instructed the jury on the defense of superseding cause.

The trial court instructed the jury about superseding cause in the following manner:

"Ladies and gentlemen, a holder of a liquor permit is not responsible for the death of another if the intoxication which is caused by the sale of an intoxicating beverage to a noticeably intoxicated individual is a remote cause of the death and not a proximate cause.

"The causal connection of the first sale—I'm going to define for you superseding cause here. The causal connection of the first sale is broken and superseded by the second if the intervening act is both new and independent.

"The term independent means the absence of any connection or relationship of cause and effect between the original and the subsequent act. The term new means that the second act could not reasonably have been foreseen.

"It is not necessary that the defendants' act of providing intoxicating liquor or beer to the intoxicated Leon Howlett be the sole cause of the decedent's death here.

"However, before you may find that the defendants' acts were a cause of the plaintiff's injury, you must find that the intoxicated person's conduct which caused the plaintiff's death resulted from his intoxication."

Reitz argues that it was improper to instruct on the issue of superseding cause. Specifically, he contends that if the taverns violated the statute and the death was proximately caused by Howlett's intoxication, liability arises as a matter of law.

In this case, the trial court properly gave an instruction on superseding cause. It is well established that a superseding event will break the chain of causation. Our review of the record indicates that the instruction as given was warranted, and therefore, it was for the jury to consider whether a superseding event broke the chain of proximate cause in this case.

### B

In his fifth assignment of error, Reitz argues that the trial court mistakenly allowed a videotape transcript of an audiotape recording into the jury room during deliberations.

At trial, Chuparkoff testified that he did go to the jail and recorded a conversation between himself and Howlett. The recording was played for the jury at trial. Furthermore, a videotape transcript was played to the jury along with the audiotape at trial. This videotape and its monitor were sent into the jury room during deliberations.

Given its superior advantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party. *Barbeck v. Twinsburg Twp.* (1992), 73 Ohio App.3d 587, 592, 597 N.E.2d 1204, 1207–1208. At trial, none of the defendants contested the fact that the videotape transcription accurately reflected the contents of the audiotape recording. Furthermore, the trial court did instruct the jury not to give the videotape transcript added weight. Given its accurate reflection and the cautionary instruction, we determine that the trial court did not err when it allowed the transcript into the jury room. Contra *State v. Rogan* (1994), 94 Ohio App.3d 140, 640 N.E.2d 535.

### C

In his sixth assignment of error, Reitz argues that the trial court improperly apportioned the number of peremptory challenges by giving the defendants twice as many challenges as Reitz.

During voir dire, the trial court afforded Reitz three peremptory challenges. The trial court also gave Chuparkoff three peremptory challenges and gave Dean three peremptory challenges as well. Reitz argues that the interest of each defendant was essentially the same. Therefore, the trial court should have only afforded the defendants a total of three peremptory challenges.

Civ.R. 47(B) governs peremptory challenges. It states in part:

"Challenges to Jury. In addition to challenges for cause provided by law, each party peremptorily may challenge three jurors. If the interests of multiple litigants are essentially the same, 'each party' shall mean 'each side.'"

We note that Reitz never objected to the trial court's apportionment of peremptory challenges. "An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642–643. Thus, Reitz waived his right to assign as error the apportionment of peremptory challenges.

Assuming, *arguendo*, that Reitz objected, the trial court did not err by giving each defendant three peremptory challenges. *LeFort* also provides the applicable standard of review as to this issue. If the interest of each defendant is essentially different or antagonistic, then each defendant is entitled to a full number of peremptory challenges. *Id.* at 125, 512 N.E.2d at 644–645. In *LeFort*, the court determined that the defendants maintained different interests based on several factors. These factors included the retention of separate counsel, the filing of separate replies, and the assertion of individual defenses. *Id.*

This case is very much the same. Dean and Chuparkoff retained separate counsel and filed separate answers. More important, each asserted its own defense. Conceivably, one but not both of the defendants could have incurred liability based on the defenses asserted. Dean's position was sufficiently different from Chuparkoff's to warrant three peremptory challenges for each.

D

In his seventh assignment of error, Reitz contends that the trial court mistakenly excluded from evidence a witness's criminal record of dishonesty.

At trial, Chuparkoff introduced into evidence the deposition of one of his witnesses, Dan Beckwith. The trial court permitted the reading of the deposition to the jury. In the deposition, Beckwith stated that he pled no contest to misuse of property. At trial, Reitz attempted to impeach the deposition testimony by

offering a record of Beckwith's criminal conviction. The trial court denied the admission of the record of criminal conviction based on Evid.R. 609(F).

When the trial court discussed the admissibility of the evidence with counsel for all parties, counsel for Dean stated that he desired to admit the evidence to impeach Beckwith's deposition testimony given during cross-examination. Reitz's counsel said, however, "I withdrew my cross, but [counsel for Dean] did not."

On appeal, Reitz now argues that the trial court should have admitted the evidence. However, Reitz withdrew his cross-examination during trial. By doing so, he gave up his right to impeach the testimony of Beckwith. Thus, on appeal, he has waived his right to assign as error the failure to admit the evidence. *LeFort, supra.*

### III

All of the appellant's assignments of error are overruled. Because of our determination concerning the appellant's assignments of error, we do not have to address appellee's cross-assignment of error. App.R. 12(A)(1)(c). The judgment of the trial court is affirmed.

*Judgment accordingly.*

SLABY and MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.