OPINION
This case involves an accident that occurred at about 7:00 p.m., on July 2, 1993, at the intersection of State Route 303 ("Rt. 303") and State Route 700 ("Rt. 700") in Freedom Township, Portage County, Ohio. Appellee, David Ballentine, was driving a pickup truck westbound on Rt. 303 when he collided with the car driven by appellant, Triya Nanavati. Triya's sister, Tania, and her father, Unday Nanavati, were passengers in the car, which was traveling southbound on Rt. 700. Rt. 303 has the right of way over traffic traveling across Rt. 303 on Rt. 700, which is controlled by stop signs and a flashing red light. A flashing yellow light faces traffic on Rt. 303.
On April 13, 1995, appellee filed a complaint against Triya Nanavati, which he later voluntarily dismissed. On June 14, 1995, Triya Nanavati filed a counterclaim against appellee alleging that he had negligently operated his vehicle and proximately caused the accident. On June 29, 1995, Tania and Unday Nanavati filed a similar complaint against appellee as case number 95 CV 0484. These cases were tried together before a jury.
Triya Nanavati testified that she was in a coma for a few weeks after the accident and did not remember any of the events from the day of the accident. Tania Nanavati testified that: Triya was driving from Hiram, where Tania went to school, to Berea, where Triya lived; Triya was not familiar with the road and they were looking for a place to have dinner; she believed that Triya was paying attention, but that the accident happened very fast; and, she heard no horn from the truck or screeching brakes.
Appellee owned a business called Northeast Ohio Field Services, a trucking company located on State Route 88 ("Rt. 88"). He testified that he traveled the same stretch of Rt. 303 every day when he went home from work and that the speed limit is 55 miles per hour. Appellee also testified that the Rt. 303/Rt. 700 intersection was dangerous because the visibility of drivers on Rt. 700 looking down Rt. 303 was partially obstructed by shrubbery and that he had seen accidents occur there because people often failed to stop at the intersection. At trial, he testified that he first saw appellant's vehicle when he was 160 feet from it. He based the 160-foot figure on measurements he took after his first deposition, when he stated that he first saw it from 200 feet. When he saw the car, he took his foot off the accelerator; he estimated that he was going thirty-five to forty miles per hour, at this time. He did not see appellant stop her car at the stop sign, but started to apply his brakes when he saw it "creeping" into the intersection. He swerved to the left to avoid appellant's vehicle, but slammed on his brakes and veered to the right when the car further entered the intersection. The collision occurred slightly south of the centerline of Rt. 303. He estimated that he was going twenty miles per hour at impact. Both cars ended up in a ditch southwest of the intersection, about fifty feet from the point of impact.
The expert called by appellee estimated that his speed before impact was between thirty-five and forty miles per hour. The trooper who investigated the accident estimated his speed at between thirty-five and forty-five. Appellant called Dr. Urich, who was an expert at analyzing and reconstructing traffic accidents and a physics professor at Kent State University. Dr. Urich estimated appellee's speed at between forty-seven and fifty-four miles per hour and appellant's speed at between five and eight miles per hour. Based on these speeds, he estimated that appellee was 245 to 280 feet from the intersection when appellant's vehicle entered the roadway. At the estimated speeds, appellee could have stopped his truck within 210 to 243 feet.
On numerous occasions, appellant's counsel attempted to elicit the opinion from Dr. Urich that appellee could have avoided the collision by acting in a manner different than he did. The trial court sustained objections to the following questions asked for that purpose:
 "Now, in that regard, and based on your review of the analysis, you have explained it, and your education, training and experience, do you have an opinion with a reasonable degree of scientific certainty as to whether or not Mr. Ballentine had an opportunity to avoid the accident?"
 "Do you have an opinion, based on your education, training and experience and scientific certainty, as to whether or not the collision would have occurred if Mr. Ballentine would have applied the brakes?"
 "Do you have an opinion, sir, as to whether or not slowing would have avoided the collision, slowing by Mr. Ballentine?"
 "Have you made any calculations with respect to what would have been necessary by the defendant in this case to slow his vehicle so that there would be no crash?"
 "Are there any alternatives with respect to applying the brakes at 240 feet east of the collision that would have avoided the collision?"
 "Do you have any opinion as to whether or not Mr. Ballentine would have avoided the collision if he had not swerved?"
The trial court gave no reason for sustaining the objections. Appellant later proffered that had Dr. Urich been allowed to answer, he would have testified that appellee could have avoided the collision by applying his brakes earlier, staying in his lane, or simply slowing down. Comparative negligence instructions and interrogatories were submitted to the jury.
The jury returned a verdict in favor of appellee. In an interrogatory submitted to them, they answered that either appellee was not negligent or that his negligence was not the proximate cause of the collision. Appellant appeals and raises the following assignments of error:
 "[1.] The court committed plain error prejudicial to the plaintiff-appellant by instructing the jury that it could apply the court's instructions of statutory traffic law at the jury's discretion.
 "[2.] The trial court committed reversible error in failing to instruct the jury on the issue of the duty to look and the duty to look effectively as requested in plaintiffs-appellants' proposed jury instructions number 16 and 17.
 "[3.] The trial court committed reversible prejudicial error when it charged the jury that only plaintiff-appellant Triya Nanavati had a duty to look and look effectively.
 "[4.] The trial court prejudicially erred in not fully and completely instructing the jury on the law of foreseeability as a necessary element of negligence and the duty to use ordinary care as requested by plaintiffs-appellants in their request for instructions numbers 21 and 22.
 "[5.] The trial court committed reversible [error] when it failed to instruct the jury on foreseeability and the test for foreseeability.
 "[6.] The trial court committed reversible error when it failed to instruct the jury that a driver of a motor vehicle must be in reasonable control of the vehicle, and when it failed to instruct the jury on the definition of reasonable as requested in plaintiffs[`] proposed jury instructions numbers 40 and 41.
 "[7.] The trial court committed reversible error when it failed to instruct the jury that the amount of care increases in proportion to the danger that reasonably should be foreseen as requested by plaintiffs-appellants' request for instruction number 20.
 "[8.] The trial court committed reversible error in sustaining defendant-appellee's objection regarding David Uhrich's opinion as to whether or not defendant-appellee had an opportunity to avoid the accident.
 "[9.] The court prejudicially erred when it submitted to the jury interrogatory `A' which required that it answer whether or not defendant-appellee's negligence if any was the direct and proximate cause of the accident.
 "[10.] The trial court committed reversible error when it refused to give the jury plaintiffs-appellants[`] proposed interrogatories `A' and `B.'"
In her first seven assignments of error, appellant asserts that the trial court erred in its jury instructions. In reviewing a trial court's use of a particular jury instruction, the law requires us to look at the totality of the jury charge in determining whether a portion of it is harmless or prejudicial. Sech v. Rogers (1983), 6 Ohio St.3d 462, 464,453 N.E.2d 705, 707. In so doing, we are required to determine whether the challenged instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights. Kokitkav. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674. However, if the instructions fairly and correctly state the law applicable to evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Reitzv. Howlett (1995), 106 Ohio App.3d 409, 666 N.E.2d 296.
In her first assignment of error, appellant asserts that the trial court erred by giving the following instructions:
 "The fact that I give you a statute does not mean that that's how you should whether or not you feel you should need it or not, it depends on how you find the facts of the case."
 "So in addition to the general standard of care, which we all know, I'm going to outline to you some statutes in this state that you may find apply in this case, depending on how you find the facts."
 "Now, another statute that you might consider you might need is the statute on speed."
Appellant did not object to these specific instructions, but argues that we must reverse them because they were plain error. "When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 436 N.E.2d 1001, paragraph one of the syllabus. Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, the Supreme Court of Ohio has stated that the doctrine may also be applied to civil cases if the error complained of would have a material adverse effect on the character and public confidence in judicial proceedings. Id. at 209.
The instructions given to the jury do not amount to plain error. Appellant argues that the trial court's instruction allowed the jury to choose to disregard the law. In its charge, the court instructed the jury that if they determined that a driver violated a statute, then that violation was negligence; however, the trial court further instructed the jury that they had discretion to consider whether a statute was applicable, based on the facts of the case, not that they could disregard a statute. The instructions objected to are not improper. Appellant's first assignment of error is without merit.
In her second and third assignments of error, which we will address together, appellant asserts that the trial court gave erroneous instructions regarding appellee's duty to discover and avoid danger.
Appellant argues that the trial court erred by giving the following instruction:
 "The party who does not have the right of way, must look at such times and places in a manner that would make his looking effective and he must wait and travel at a speed slow enough to stop and avoid entering into the path of the approaching vehicle having the right of way."
Appellant argues that it instead should have given her proposed jury instructions number sixteen and seventeen, which read:
 "16. DUTY TO LOOK. The driver parties are required to use ordinary care to discover and avoid danger. 1 O.J.I. 7.12(1)."
 "17. LOOK EFFECTIVELY. A person is negligent if he looks but does not see that which would have been seen by a reasonably cautious, careful, and prudent person under the same or similar circumstances. 1 O.J.I 7.12(2)."
Appellant contends that the trial court's instructions failed to inform the jury that both parties had a duty to be aware of and avoid possible danger. "Under Ohio law, the driver of a motor vehicle proceeding over a through street in a lawful manner has the absolute right of way over a vehicle on an intersecting stop street, and the driver on the through street may ordinarily assume that such right of way will be respected and observed by the driver of the vehicle on the intersecting stop street."Timmins v. Russomano (1968), 14 Ohio St.2d 124, 236 N.E.2d 665, paragraph one of the syllabus. There was no evidence that appellee was operating his vehicle in an unlawful manner.
Appellee could only lose the right of way if he were driving unlawfully or discovered that another driver was not yielding the right of way and was in a perilous situation. In that event, it would become his duty to use ordinary care to not injure the other driver after becoming aware of her perilous situation. Deming v. Osinski (1970), 24 Ohio St.2d 179,182, 265 N.E.2d 554. Such a situation would raise an issue under the doctrine formerly known as the "last clear chance" doctrine, which is now merged within the concept of comparative negligence. Mathes v. Scott
(Nov. 24, 1989), Portage App. No. 88-P-2021, unreported. An issue of whether appellee had the last clear chance to avoid appellant's vehicle arguably existed in the current case, but appellant did not request a last clear chance instruction. Appellee had no duty to discover and avoid danger when traveling lawfully with the right of way, but only a duty to use reasonable care to avoid a person in peril. Thus, the trial court acted properly by not giving appellant's instructions on the duty to look. Her second and third assignments of error are without merit.
In her fourth, fifth, and seventh assignments of error, appellant asserts that the trial court erred by failing to give her jury instructions regarding foreseeability. Appellant did not object to the failure of the trial court to read proposed instruction twenty-one; however, we will address it because it is closely related to the other instructions. Her proposed instructions read:
 "18. In deciding whether ordinary care was used, you will consider whether the defendants or the plaintiff Triya Nanavati ought to have foreseen under the circumstances that the natural and probable result of their failure to act would cause some injury and damage. 1 O.J.I. 7.13(1)."
 "19. The test for foreseeability is not whether he or she should have foreseen the injury or damage precisely as it happened to a specific person. The test is whether under all the circumstances a reasonable [sic] cautious person would have anticipated that injury was likely to result to someone from the act or failure to act. 1 O.J.I. 7.13(2). See Muldrich v. Standard Oil Co. (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859."
 "20. The amount of care increases in proportion to the danger that reasonably should have been foreseen. Ordinary care is a relative term. The test, though, is still ordinary care under the circumstances."
 "21. If defendants or the plaintiff Triya Nanavati, by the use of ordinary care, should have foreseen some injury and should not have acted, or if he did act, should have taken precautions to avoid the result, then the performance of the act or the failure to take precautions is negligence."
 "22. FORESEEABILITY. If defendants or plaintiff Triya Nanavati by the use of ordinary care, should have foreseen some injury and should not have acted, or if he or she did act, should have taken precautions to avoid the result, then the performance of the act or the failure to take such precautions is negligence. 1 O.J.I. 7.13(3)."
Under the facts of this case, any failure of the trial court to give the proposed instructions on foreseeability was harmless. The trial court's charges that: "[o]rdinary care is that degree of care that a reasonably prudent and careful person would use under the same or similar circumstances," "[p]roximate cause is an act or a failure to act which in a natural and continuous sequence, directly produces the collision, and without it would not have occurred" and "[c]ause occurs when the collision is the natural and foreseeable result of the act or failure to act," when read in conjunction with the complete instructions were sufficient to inform the jury of the applicable law. Appellant's fourth, fifth, and seventh assignments of error are without merit.
In her sixth assignment of error, appellant asserts that the trial court erred by failing to give her proposed jury instructions forty and forty-one.
These instructions read:
 "40. A driver of a motor vehicle on any highway must be in reasonable control of the motor vehicle. R.C. 4511.202."
 "41. Reasonable control means the control or care that a cautious person would use under the same or similar circumstances. 2 O.J.I. 225.202."
No evidence in the record exists to imply that appellee was not in reasonable control of his truck. Appellant argues that his speed was excessive in comparison with the risk of danger at the intersection. The trial court properly instructed the jury about appellee's duty of care when approaching the intersection, including that he was required to pass through the flashing yellow light with caution and operate his vehicle at a reasonable speed. The court's instructions accurately reflected the statutory requirement that appellee exercise caution. Furthermore, the trial court instructed the jury that a greater or lesser speed than the posted speed limit may be reasonable or proper under certain circumstances. There is nothing in Ohio law to suggest that appellee had a duty other than to operate his vehicle at a reasonable speed under the circumstances. He had no absolute duty to reduce his speed when approaching the flashing yellow light. The instructions by the trial court were sufficient. Appellant's sixth assignment of error is without merit.
In her eighth assignment of error, appellant asserts that the trial court erred by sustaining an objection to Dr. Urich's testimony concerning whether appellee had an opportunity to avoid the accident. The trial court gave no reason for sustaining the objection, appellant did not ask for one, and we will not imply one. Appellee asserts that the trial court properly sustained the objection because the question was irrelevant and prejudicial to him. Whether appellee could have avoided the collision is highly relevant to this case and it is unclear why evidence would be inadmissible merely because it was prejudicial to appellee. Presumably, most of the evidence that appellant would attempt to introduce would be prejudicial to appellee.
The questions posed to Dr. Urich sought his opinion on an ultimate issue in the case. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. Even if the trial court erred by sustaining objections to the question to Dr. Urich, such error was harmless. Appellant had ample opportunity to put the information she desired before the jury. She had already elicited that, by Dr. Urich's estimation, appellee would have been able to stop before entering the intersection had he applied his brakes the moment appellant's car entered the intersection. Appellant's eighth assignment of error is without merit.
In her ninth and tenth assignments of error, which we will address together, appellant asserts that the trial court erred by submitting erroneous jury interrogatories.
The trial court submitted the following interrogatory:
 "Was the defendant negligent and did that negligence directly and proximately cause the collision?"
Appellant proposed that the court give the following interrogatories:
 "A. Was the defendant negligent and was his negligence a proximate cause of the collision?"
 "B. Was the plaintiff, Triya Nanavati, negligent and was her negligence a proximate cause of the collision?"
Appellant argues that, because the interrogatory given by the trial court did not specify that the negligence was "a" cause of the accident, it could have misled the jury into thinking that there could be only one proximate cause of the accident and that appellant could only recover if they found that appellee's negligence was the only cause of the collision.
"Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." Ramage v. Cent. Ohio EmergencyServ., Inc. (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph three of the syllabus. The jury interrogatories presented to the jury did address the determinative issues of the case. Besides the interrogatories, the trial court also instructed the jury that there could be more than one proximate cause of the collision. It is unlikely that the trial court's decision to not use the word "a" misled the jury. Appellant's ninth and tenth assignments of error are without merit.
Appellant's assignments of error are overruled, and the judgment of the Portage County Court of Common Pleas is affirmed.
 _____________________________ NADER, J.
FORD, P.J., CHRISTLEY, J. concur.