OPINION
Plaintiff-appellant Laurie Mitchell filed this appeal after a jury sitting in the Columbiana County Common Pleas Court found in favor of defendants-appellees Dr. Pamela Drake, Dr. Rachel Kaufman and Dr. James Giannini. Ms. Mitchell alleges that she was deprived of her right to present rebuttal evidence and that the court improperly granted each appellee three peremptory challenges and subsequently allowed each defendant to cross-examine the other defendants in her case in chief. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS
In late 1995, thirty-two year old Laurie Mitchell began counseling with Dr. Kaza at the Columbiana County Mental Health Center due to depression. She was admitted into East Liverpool Hospital and remained there from November 30, 1995 until December 21, 1995. She was soon readmitted and remained there from December 28, 1995 until January 3, 1996. Dr. Kaza diagnosed her as presenting schizoaffective disorder, depressed. She was then admitted to the hospital yet again on January 10, 1996 as hallucinations were telling her to hurt herself. Because Dr. Kaza had his own emergency condition, Dr. Drake treated Ms. Mitchell during the remainder of this hospitalization.
On January 26, 1996, Dr. Drake changed Ms. Mitchell's diagnosis to bipolar disorder and started her on 600 milligrams of lithium per day. On January 28, the dosage was increased to 900 mg. per day. Blood was drawn on January 29, and blood test results showed a .56 lithium level. That same day, Dr. Drake increased the dosage to 1200 mg. per day. Dr. Drake ordered another blood test on February 1, which revealed a .85 lithium level. Dr. Drake released Ms. Mitchell from the hospital on February 2, 1996.
On February 12, 1996, Ms. Mitchell visited Dr. Kaufman, who temporarily replaced Dr. Kaza. Ms. Mitchell complained that her medications were not working and complained of lethargy. (Tr. 579-581). Dr. Kaufman made adjustments to three medications; the lithium was not adjusted.
On February 16, 1996, Ms. Mitchell's blood was drawn for testing, the results of which later showed a 1.39 lithium level. That same day, she visited Dr. Giannini who made the following observations: flat affect, dysphoric mood, decreased psychomotor behavior, poor judgment, low fund of knowledge, slow math skills, some tremors, slurred speech, and drooling. (Tr. 1159-1160; Exhibit 5). Dr. Giannini referred her to a psychologist in his office for testing and therapy which continued for one month. (Exhibit 6).
On March 15, 1996, Ms. Mitchell visited Dr. Giannini again. She had a 104 degree fever and tremors. Dr. Giannini gave her a prescription for a blood test and discontinued all of her medications except lithium. (Tr. 1178-1180). Ms. Mitchell's husband brought her to the emergency room of Salem Hospital on March 17, 1996. She had tremors, was confused and restless, could not follow commands, and had an abnormal gait. A blood test revealed a 1.45 lithium level. The treating physician, Dr. Cutrona, suspected lithium toxicity and urinary tract infection. He ruled out spinal meningitis with a spinal tap.
From Salem Hospital, Ms. Mitchell was transferred to North Side Hospital in Youngstown, Ohio where she was treated by Dr. Nagpaul, a neurologist. He described her as incoherent and mumbling and noticed her extremities moving in a dystonic pattern. Dr. Nagpaul diagnosed Ms. Mitchell with lithium toxicity. On April 4, 1996, she was released from North Side Hospital and spent months of rehabilitation at South Side Hospital. Ms. Mitchell currently describes her resulting physical condition as follows: garbled and slurred speech, mild tremors of head and extremities while at rest, uncontrollable jerky movements when in motion, confined to a wheelchair, and unable to take care of herself.
On January 6, 1997, appellant filed a medical malpractice complaint against Dr. Drake, Dr. Kaufman and Dr. Giannini. After various procedural events, the case was refiled in 1998. Ms. Mitchell alleged that Dr. Drake was negligent by drawing lithium levels too soon after increasing the dosage; the blood tests were performed one day after the first increase and then three days after the second increase. According to appellant's expert, a blood level should be taken no sooner than five days after a dosage is increased. Ms. Mitchell also claimed that Dr. Drake had a duty to follow up on her patient's care by prescribing a later blood test or communicating with Dr. Kaufman.
Ms. Mitchell then alleged that Dr. Kaufman was negligent in failing to recognize the early signs of lithium toxicity, failing to order a lithium level, and failing to look at the hospital records. Ms. Mitchell claimed that Dr. Giannini was negligent by failing to view the results of the February 16, 1996 blood test which showed a 1.45 lithium level, failing to notice her deteriorated condition over the month Ms. Mitchell visited his office or at least on March 15 when she visited him for the second time and presented classic signs of lithium toxicity, and failing to discontinue the lithium when he discontinued all other drugs. (Apparently, Columbiana County Mental Health Center was a defendant, but settled prior to trial.)
The case was tried to a jury over a period of weeks at the end of June and the beginning of July 2000. Each doctor defended by arguing that he/she was not negligent and that Ms. Mitchell's present condition was not caused by lithium toxicity. Obviously, the case was a battle of the experts. On July 14, 2000, the jury returned its verdict. The jury found Dr. Drake not negligent. The jury then found Dr. Kaufman and Dr. Giannini negligent but found that their negligence was not the proximate cause of Ms. Mitchell's injuries. The within timely appeal followed.
 ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
Ms. Mitchell's first two assignments of error revolve around the same alleged error and are discussed together in her brief. As such, they will be analyzed simultaneously herein. These assignments provide as follows:
 "THE TRIAL COURT VIOLATED O.R.C. 2315.01 AND COMMITTED PREJUDICIAL ERROR BY PRECLUDING PLAINTIFF FROM CALLING ANY EXPERT WITNESS ON REBUTTAL AND BY PRECLUDING PLAINTIFF FROM READING PORTIONS OF DEPOSITIONS, ON REBUTTAL, OF EXPERT WITNESSES THAT DEFENDANTS HAD IDENTIFIED AND WHICH HAD NOT BEEN DEPOSED, BUT WHICH DEFENDANTS ELECTED NOT TO CALL AS THEY CONTRADICTED AND REFUTED THE TESTIMONY OF OTHER EXPERTS OF THE DEFENDANTS."
 "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY PRECLUDING PLAINTIFF FROM CALLING ANY EXPERT WITNESS ON REBUTTAL AND FROM READING THE DEPOSITIONS OF EXPERT WITNESSES THAT DEFENDANTS HAD IDENTIFIED AND WHICH HAD BEEN DEPOSED, BUT WHICH DEFENDANTS ELECTED NOT TO CALL AS THEY CONTRADICTED AND REFUTED THE TESTIMONY OF OTHER EXPERTS."
These assignments of error claim that the testimony of four different experts was improperly excluded. We shall first discuss the issues surrounding the first expert.
After prior discovery problems, the court ordered that the plaintiff disclose her experts and their respective reports by April 9, 1999. Thereafter, the defendants were to submit their experts and reports in July 1999. The defendants' experts were then deposed. On October 21, 1999, Ms. Mitchell disclosed that Dr. Spring would be her rebuttal expert and submitted his report. Each defendant filed a motion to exclude the testimony of Dr. Spring on the ground that his report did not contain rebuttal testimony and thus disclosure was untimely considering the discovery schedule and the fact that there remained three weeks before the scheduled trial.
On November 12, 1999, the court sustained the defendants' motions and ruled that Dr. Spring's testimony would be excluded. Days later, the trial judge transferred the case to another trial judge. The new judge ruled that all prior orders shall remain in effect, the parties cannot add to their witness lists, and prior rulings on motions in limine and discovery closure will not be revisited. On December 14, 1999, Ms. Mitchell filed a motion to vacate the court's order excluding Dr. Spring. The court denied this motion.
Ms. Mitchell now claims that the court violated her statutory right to present rebuttal evidence and prejudicially erred by excluding the testimony of Dr. Spring. Each defendant argues that Ms. Mitchell waived this argument by failing to raise the issue of Dr. Spring at trial and thereafter proffer his testimony on the record. The defendants note that a motion in limine is a preliminary ruling which cannot be appealed unless the losing party's objection is preserved at trial. In her reply brief, Ms. Mitchell disputes that the exclusion of Dr. Spring was done pursuant to a motion in limine.
In the alternative, each defendant argues that Dr. Spring's report did not contain rebuttal evidence but contained evidence that should have been presented in Ms. Mitchell's case in chief and thus is evidence which could properly be excluded due to the discovery violations. They claim that Dr. Spring's testimony is cumulative and not true rebuttal testimony. Ms. Mitchell replies that Dr. Spring's testimony contradicted testimony of many of the defendants' experts as Dr. Spring would testify that he believed Ms. Mitchell's injuries were caused by lithium toxicity.
A witness who will provide rebuttal testimony need not appear in the plaintiff's pretrial witness list in order to be presented at trial. Phungv. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408, 410-411. However, to be presented in rebuttal, the testimony must be on matters first addressed in the defendant's case. Id. at 410. Rebuttal is not testimony that was or should have been raised in the plaintiff's case in chief. Id. Rebuttal testimony is not merely a restatement or repeat of the expert opinion first given by the plaintiff's expert in the plaintiff's case in chief; its presentation is not warranted merely because a defense expert gave an opinion contrary to the plaintiff's expert. Id. Additionally, this court has explained that rebuttal cannot be used to refute matters raised for the first time in the defendants' case but only as a result of matters brought out by the plaintiff herself on cross-examination. Weimer v.Anzevino (1997), 122 Ohio App.3d 720, 725.
Thus, when plaintiff's expert and treating physicians opined that her injuries were caused by lithium toxicity, and a defense expert opined that they were psychogenic, plaintiff cannot rebut by reiterating that her injuries were caused by lithium. This is what plaintiff reveals to us that she wished to accomplish through Dr. Spring's testimony. Her brief discloses that she wished to use Dr. Spring's opinion that Ms. Mitchell suffered from lithium toxicity to rebut defense expert opinions that she did not. This is not true rebuttal testimony. True rebuttal specifically rebuts issues first raised in the defendants' case and concerning matters that should not have been raised in the plaintiff's case in chief, as she need not preemptively counter defense arguments. Dr. Spring's desired testimony, as described in plaintiff's brief, is merely reiteration of her expert's opinion and the opinions of her treating physicians. (Tr. 829-830, 977, 990, 1322-1323, 1370-1371, 1817).
As the reasons for plaintiff wishing to present testimony of Dr. Spring were not endowed with features of true rebuttal testimony, there was no error when the trial court excluded him as a witness who was revealed six months after plaintiff's deadline for disclosure of experts had closed and three weeks before the scheduled trial at the time, especially after she violated the original discovery closure dates. Plaintiff made and makes no contention that Dr. Spring was to testify in her case in chief. Thus, we need not delve any further into the court's discretion in excluding the late revelation of a nonrebuttal witness.
Moreover, after the court excluded Dr. Spring as a witness, if plaintiff subsequently realized that Dr. Spring could specifically rebut testimony first raised by the defense that should not have been raised in plaintiff's case in chief, then plaintiff should have attempted to present rebuttal at trial. This was not done. Instead, when the court asked if plaintiff had any rebuttal, counsel responded in the negative. (Tr. 3225).
We may now progress to the final three experts whose testimony was allegedly excluded. Ms. Mitchell claims that the court violated her statutory right to present rebuttal evidence and prejudicially erred by precluding her from reading the deposition testimony of three experts who the defendants revealed in discovery but who were not called by the defendants to testify at trial. These experts are Drs. Baird and Carroll, who were initially disclosed as two of Dr. Kaufman's experts and Dr. Valeriano, who was disclosed as one of Dr. Giannini's experts.
According to the defendants, Ms. Mitchell never attempted to read these depositions in rebuttal. They point to the court asking if there is any rebuttal and receiving a negative answer from Ms. Mitchell's counsel. (Tr. 3225). They also note that the court ruled that she could read the portions of the depositions in her case in chief where she originally proposed they be read. The court's only stipulation was that the other relevant portions of these depositions must be read at the same time pursuant to the defendants' request and pursuant to Civ.R. 32(A)(4). (Tr. 217-218, 323-325). Apparently, Ms. Mitchell was unsatisfied with having to read more of the depositions than the pieces she chose. As such, she did not read the deposition testimony into her case in chief.
In conjunction with the trial strategy/waiver argument, the defendants argue, as they did with regards to Dr. Spring's testimony supra, that the deposition testimony which Ms. Mitchell wished to read was not rebuttal as it did not address issues that were newly raised in the defendants' cases. Rather, they merely reiterated statements presented in Ms. Mitchell's case in chief. For instance, plaintiff wished to read Dr. Baird's deposition testimony that opined that Ms. Mitchell suffered from prolixin toxicity compounded by lithium. She believes that this would rebut Dr. Paulson's testimony about hysteria or another psychogenic cause and Dr. Davison's testimony about undiagnosed spinal meningitis as the cause. However, these arguments fail under our prior analysis; a reiteration of lithium's involvement is not rebuttal. Further, her experts and defense experts already testified that prolixin enhances lithium's effects. (Tr. 1014, 1023, 1289, 1346-1347, 2857, 3101-3102). Lastly, we must point out that plaintiff voluntarily engaged in preemptive rebuttal in her case in chief by asking Dr. Fettman if the injuries could be the result of psychogenic hysteria or spinal meningitis. (Tr. 1358-1359, 1361-1364). She also preemptively excluded these causes through other witnesses in her case in chief. Thus, she raised the issues first in anticipation of the defense experts' various opinions.
Ms. Mitchell states that she wanted to present the deposition testimony of Dr. Carroll who set forth the standard of care for initiating a patient on lithium and stated that if it was not lithium toxicity, then she did not know what it could be. Plaintiff's own expert, Dr. Fettman, testified about the standard of care for initiating lithium. (Tr. 1317-1319). Further, plaintiff basically got Dr. Kaufman and Dr. Giannini to agree that their standards of care for initiating a patient on lithium were not met by Dr. Drake. (Tr. 527, 1171-1172). As for reiteration of an opinion that Ms. Mitchell suffered from lithium toxicity, we have previously analyzed why this is not rebuttal.
Ms. Mitchell also wished to present the deposition testimony of Dr. Valeriano who opined that he believed the diagnosis should be lithium toxicity enhanced by urosepsis. As analyzed supra, this does not rebut something first raised by the defense, but reinforces something presented in the plaintiff's own case. This is not true rebuttal but is something that plaintiff had the burden to prove, that lithium toxicity caused her injuries. Dr. Fettman also testified that urosepsis helped push plaintiff's lithium toxicity over the edge. (Tr. 1367-1368). Moreover, defense expert, Dr. Silk, made a diagnosis similar to Dr. Valeriano's and explained that urosepsis could decrease kidney function thus allowing more lithium than normal to be absorbed into the system. (Tr. 2389).
Plaintiff also wanted to read Dr. Valeriano's opinion that toxicity can occur at therapeutic levels to rebut various defense experts. However, her own witness testified to this, and multiple defense experts conceded this. (Tr. 1290). For instance, Dr. Silk admitted that toxicity could occur in the therapeutic range for one patient and above this range for another patient. (Tr. 2249, 2260).
Finally, she wished to rebut testimony of Dr. Silk by disclosing that Dr. Valeriano once read an article which concluded that lithium toxicity can cause cerebellum damage. First of all, the existence of articles on this relationship was originally presented in plaintiff's case in chief by her expert, Dr. Fettman. (Tr. 1374-1375). Secondly, any testimony by Dr. Silk that he is unaware of literature on lithium affecting the cerebellum occurred only at the time of his deposition. At trial, Dr. Silk had since read multiple articles finding that lithium can affect the brain, specifically the cerebellum. He now admits that he agrees with the findings of these articles concerning lithium toxicity as impairing the central nervous system and its cerebellum. (Tr. 2254-2256). Therefore, there was absolutely no reason to rebut his testimony on this subject.
In addition to our conclusion that the rebuttal arguments set forth under plaintiff's assignments of error do not refer to true rebuttal evidence, there is another waiver issue set forth in the brief of one defendant. Plaintiff did not proffer what testimony she wanted to read in rebuttal. Although portions of the deposition testimony which Ms. Mitchell desired to read were presented to the trial court in paper and are now before this court, this was the testimony which she wanted to read into her case in chief; it was not set forth as rebuttal testimony, likely because it contained little that would be considered rebuttal.
Moreover, although plaintiff proffered some deposition testimony into the record of proceedings, this was in response to the court's order that plaintiff could not ask defense expert Dr. Silk about deposition testimony that was not part of the record as of yet. (Tr. 2428-2429). Additionally, this proffer did not mention anything about Dr. Valeriano's testimony on the articles he read, therapeutic levels, or urosepsis. Rather, this proffer included the following: Dr. Valeriano would testify that prolixin enhances lithium, that he would have ordered a level on February 12, and that he would have considered the diagnosis of lithium toxicity; Dr. Baird would have testified that drooling is a symptom of lithium toxicity and that prolixin enhances lithium; and Dr. Carroll would testify that drooling is a symptom of lithium toxicity. (Tr. 2429-2430). As the defense argued, the depositions were not in evidence and thus should not be referenced or read during the cross-examination of other defense experts. As can be seen, many of the issues plaintiff raises on appeal as being testimony she wanted to use as rebuttal were not provided in this proffer.
We should note that after proffering this expert testimony that the court ruled could not be raised on cross-examination of other experts, plaintiff then mentioned that she wanted to read those parts of the deposition into evidence during rebuttal. (Tr. 2430). The defense objected, noting that when plaintiff requested to read this testimony into plaintiff's case in chief, the court ruled that this would be acceptable as long as other relevant portions were also read into the record pursuant to Civ.R. 32(A)(4). Plaintiff chose to forgo this opportunity. On the record, plaintiff revealed that she decided not to present the deposition testimony because she felt the court was going "to force me to read the entire deposition in the record in my case." (Tr. 2430). Notably, plaintiff does not complain about this Civ.R. 32(A)(4) ruling to read all relevant portions of deposition testimony in plaintiff's case in chief. Rather, plaintiff complains about an alleged denial of the right to present rebuttal. Before plaintiff brought up the question of rebuttal, the court chastised plaintiff for missing her opportunity to present the deposition and then trying to get them in through cross-examination of other witnesses, warning that plaintiff will not get the depositions into evidence. One reason for this may have been that the court realized the depositions, or at least the portions set forth by plaintiff, were not proper rebuttal testimony. Moreover, after
plaintiff mentioned her desire to read the proffered portions of the depositions on rebuttal and after the defendants noted their objections, there is no ruling by the court. (Tr. 2430-2432). Subsequently, when the time arrived to present rebuttal and the court asked plaintiff if she had any rebuttal to present, plaintiff responded in the negative. (Tr. 3225).
In conclusion, plaintiff argues issues on appeal that are different than those set forth for the trial court's consideration. Additionally, what she now claims is rebuttal testimony is not true rebuttal evidence. Under the foregoing analysis, plaintiff's citations to the fourteen-volume record do not demonstrate that she was improperly denied the opportunity to present rebuttal evidence. Accordingly, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER THREE
Ms. Mitchell's third and final assignment of error contends:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING EACH DEFENDANTS THREE PEREMPTORY CHALLENGES AND BY ALLOWING EACH OF THE DEFENDANTS TO CROSS EXAMINE THE OTHER DEFENDANTS IN PLAINTIFF'S CASE IN CHIEF SINCE DEFENDANTS' POSITIONS IN THIS CASE WERE NOT ADVERSE TO EACH OTHER."
Pursuant to Civ.R. 47(B), each party shall receive three peremptory challenges; however, if the interests of multiple litigants are essentially the same, then that side will share three peremptory challenges. In this case, the court gave each defendant three challenges. Ms. Mitchell contends that her three peremptory challenges compared to their nine, allowed them to handpick the jury. (One defendant notes that Ms. Mitchell used her three challenges plus an alternate challenge and only six peremptory challenges were exercised by the defendants collectively.) Ms. Mitchell concludes that the interests of the defendants were not adverse because they filed similar motions and objections, had no cross-claims and cooperated with each other in their defense strategies. Thus, she claims they should have been forced to share three peremptory challenges rather than receive three each.
The Supreme Court of Ohio has applied Civ.R. 47(B) in LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121. The Court held that parties with identical interests must share peremptory challenges as if one party, whereas those with interests that are essentially different or antagonistic are entitled to separate peremptory challenges. Id. at 125. In that case, the Court held that the trial court did not err in giving each defendant three peremptory challenges as each defendant was represented by separate counsel who filed separate replies and separate motions. The Court noted that each defendant could prove he was not negligent independently of the other defendants. Moreover, each defendant asserted defenses which, if believed, would absolve it of liability to the detriment of the others. Hence, the Court concluded that the defendants' allegations "did not necessarily stand or fall together."Id.
The Sixth District Court of Appeals applied LeFort in a medical malpractice action to uphold the trial court's granting of three peremptory challenges to each defendant. Bernal v. Lindholm (1999),133 Ohio App.3d 163. That court noted that each defendant had separate counsel and filed separate pleadings and motions. The court held that although the medical theory of tracheal hemorrhage could have exonerated all defendants, if the jury chose not to accept the theory, it nevertheless could have found one defendant liable and not another. Id. at 176. See, also, Reitz v. Howlett (1995), 106 Ohio App.3d 409, 419
(noting that if one defendant could conceivably be held liable and one defendant could be held not liable, then the defendants' positions are sufficiently different).
In the case before us, the complaint alleged that each doctor performed a negligent act at a different point in time, at a separate medical appointment. Each defendant was represented by a separate and independent attorney. The defendants filed separate answers, which alleged in part that the negligence of other parties was the proximate cause of Ms. Mitchell's injuries. Each defendant filed a separate motion for summary judgment. Part of the plaintiff's trial strategy was to pit the opinion of one defendant against the opinion of another. See Huth v. Shubert
(June 21, 1993), Stark App. No. CA-9062, unreported, 4 (mentioning this as a factor in determining whether the defendants have dissimilar interests under Civ.R. 47(B) and LeFort).
Similar to the Bernal case, although the various alternative cause theories presented by the defendants could (and did) exonerate all three defendants, if the jury believed that Ms. Mitchell's injuries were caused by lithium toxicity, it could have found any one of the defendants liable to the exclusion of the other defendants. As aforementioned, the jury in fact found that Dr. Drake breached no duty but that Drs. Kaufman and Giannini did. In conclusion, the defendants' allegations "did not necessarily stand or fall together." See LeFort, 32 Ohio St.3d at 125. As such, the court did not err in granting each defendant three peremptory challenges.
Under this assignment, Ms. Mitchell also complains that the court erred by employing the same reasoning used for granting each defendant three peremptory challenges in order to allow each defendant to cross-examine the other defendants in the plaintiff's case in chief. She states that this prevented her attorney from presenting a clear and cohesive case and allowed the defendants to begin constructing their defenses in her case in chief. This argument is overruled as it is based on the result of Ms. Mitchell's argument regarding peremptory challenges.
Pursuant to R.C. 2317.07, the plaintiff cross-examined the defendants in her case in chief. When this occurs in a case where the defendants have interests that are adverse to each other as well as to those of the plaintiff, each defendant may cross-examine each other defendant after they are cross-examined by plaintiff in her case in chief. Rice v. YellowCab Co. (1961), 117 Ohio App. 183, 200-202. See, also, Epling v. PacificIntermountain Exp. Co. (1977), 55 Ohio App.2d 59, 63; Geisler v. AkronCity Hosp. (Dec. 28, 1998), Summit App. No. 13716, unreported, 1; CrossCountry Inns, Inc. v. Habegger Corp. (Mar. 16, 1995), Franklin App. Nos. 94APE01-41, -42, -92, -93, unreported, 8.
As aforementioned, each defendant in the present case could be held liable for separate acts occurring at separate times. Their defenses on breach of duty did not stand or fall together. Rather, they each claimed that someone else's negligence caused Ms. Mitchell's injuries. Knowing this, when the plaintiff cross-examined the defendants in her case in chief, she attempted to pit each defendant's testimony against another defendant.
We provide the following example portions of the defendants' testimony that is unfavorable to the other defendants. Firstly, Dr. Drake assumed that Dr. Kaufman would order a blood level and suggested that Dr. Kaufman had a duty to get Ms. Mitchell's medical history from the hospital. (Tr. 402, 458-466). Dr. Drake also agreed that neuroleptics should be discontinued slowly, thus indicating Dr. Giannini may have acted too rashly. (Tr. 495, 497). Next, Dr. Kaufman admitted that Dr. Drake should have waited four to five days to draw a blood level and should have followed up. (Tr. 531, 539-540). Dr. Giannini criticized Dr. Drake's early blood level and opined that Dr. Kaufman should have sought out Ms. Mitchell's chart, talked to Dr. Drake, and ordered a blood level. (Tr. 1171-1172). Accordingly, the interests of the defendants were sufficiently adverse to properly allow each defendant to cross-examine the other defendants after they were cross-examined by plaintiff in her case in chief. Thus, this argument and assignment of error are overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.