CHAKERES, APPELLANT, *v.* MERCHANTS & MECHANICS FEDERAL SAVINGS & LOAN ASSN. ET AL., APPELLEES.

(No. 585—Decided June 8, 1962.)

*Mr. Golden C. Davis* and *Messrs. Cole & Cole,* for appellant.
*Messrs. McKee, Schwer, Hicks, Taggart & Wehler* and *Mr. William E. Bailey,* for appellees.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Clark County rendered upon a jury verdict for the defendants in an action by the plaintiff to recover for damages to his building allegedly caused by the defendants while constructing a party wall upon adjoining property.

Hereinafter, the plaintiff-appellant, Phillip Chakeres, will be referred to as "Chakeres"; the defendant-appellee, Merchants & Mechanics Federal Savings & Loan Association, will be referred to as "Merchants"; and defendant-appellee, Bank Building & Equipment Corporation of America, which specializes in the construction of banks, will be referred to as the "Contractor."

For some time prior to December 23, 1953, Chakeres and Merchants owned adjoining buildings in downtown Springfield which were divided by a common wall partially located on the property of each.

On December 23, 1953, Merchants and Contractor entered into a contract for the demolition of the building on Merchant's property, and for the construction of a new bank building.

Demolition started on March 29, 1954, and excavation for the foundation of the new bank was commenced on May 6, 1954. The excavation was completed on May 11, 1954.

Thereafter, on June 28, 1954, Chakeres and Merchants entered into a party wall agreement which provides in part as follows:

"(A) First Party [Merchants] agrees at its own expense to immediately remove the present party wall between said premises, and to build a new party wall, 12 inches in thickness, on the dividing line between said parcels of land, one-half thereof on the land of each of the parties hereto, and also to build a foundation base therefor of not to exceed 4 feet in width, and one-half thereof to be on the land of each of said parties.

"Said wall shall be constructed of concrete for the basement, and shall extend to a height of three floors above the basement, and the wall for said three floors shall consist of brick masonry filled in between reinforced concrete pillars, and said wall shall extend from the front or west end of said premises

eastwardly for a distance of 104 feet and 8 inches, and with an extension thereof of 17 feet for the basement only.

"(B) Second Parties [Chakeres] will immediately make such arrangements in and upon their property, in the way of supports and shoring of their building as may be necessary to support the floors and other portions thereof during the removal of the present party wall, and other parts of the north wall of Second Parties which will require removal in order to permit of the construction of the new wall referred to in item A above, and such shoring and other precautionary measures for the protection of the building on Second Parties' premises shall be done at the expense of Second Parties.

"(C) Both of the parties shall have the equal rights to the use of said wall, upon its completion, for the support of their own structures and the enjoyment of their respective properties.

"* * *

"(E) Inasmuch as the construction of the new wall by First Party, for the distance and in the manner hereinbefore set forth, will require in addition to the removal of the old party wall, the removal of certain foundation work now installed on the property of Second Parties, and which is located entirely on the property of Second Parties and is used for the support of certain buildings now located thereon, it is agreed that Second Parties shall likewise promptly install the necessary shoring of the buildings on their property, and that First Party will remove said present foundations at its own expense and construct the wall thereon as hereinbefore provided, and further that it will, if Second Parties will agree thereto, while said work is in progress, extend the wall over the eastern most distance of 17 feet thereof hereinbefore referred to, to such height as may be necessary to provide a support for the present structures of Second Parties thereon, and will likewise, if Second Parties consent thereto, pay the cost of roofing that part of Second Parties' one floor structure, which now extends eastwardly beyond the original 50-foot party wall above referred to, and for the full length of the current extension of the party wall from said point eastwardly as hereinbefore provided, and in such manner as will afford surface water drainage for

and from such new roof, and such drainage to run in an easterly direction.

"* * *"

Pursuant to the agreement, Chakeres had his building shored by a local contractor on July 1, 1954. On July 3, 1954, Contractor, pursuant to a revised contract with Merchants, then proceeded to remove the old wall and construct a new party wall. On July 14, 1954, while the work was being done by Contractor, Chakeres' building collapsed into the excavation which had been made on May 11, 1954. As a result thereof, the present action was commenced on June 21, 1956. Judgment was entered on October 29, 1959, and a motion for new trial overruled on March 6, 1961.

The party wall agreement has been set forth herein at some length because it apparently had a crucial effect upon the jury's determination as disclosed by answers to the following interrogatories:

Interrogatory No. 2. "Does the jury find that the plaintiff and the defendant, Merchants and Mechanics Federal Savings and Loan Association, entered into a party wall agreement on the 28th day of June, 1954, by which agreement the Merchants and Mechanics Federal Savings and Loan Association was to remove the party wall between the plaintiff and the defendant's premises and to build a new party wall dividing said parcels of land:"

Answer: (By all 12) "Yes."

Interrogatory No. 3-A. "If your answer to interrogatory No. 2 was yes, did any acts or omissions by the plaintiff, in shoring his building, cause it to collapse?"

Answer: (By 9) "Yes."

Interrogatory No. 3-B. "If your answer to interrogatory No. 3-A was yes, state what acts or omissions by the plaintiff caused plaintiff's building to collapse."

Answer: (By 9) "Improper shoring."

Interrogatory No. 21. "Was the defendant, Merchants and Mechanics Federal Savings and Loan Association, guilty of any negligence?"

Answer: (By all 12) "No."

In the present appeal, nineteen assignments of error have

been filed, the first of which is that the trial court erred in granting each defendant four peremptory challenges.

Section 2313.44, Revised Code, provides:

"In addition to the challenges for cause under Sections 2313.42 and 2313.43 of the Revised Code, each party peremptorily may challenge four jurors."

Under statutes which allow a specific number of challenges to "each party," the majority view is that those who have identical interests or defenses are to be considered as one party and therefore only collectively entitled to the number of challenges allowed to one party by the statute. 136 A. L. R., 418. However, if the interests of the parties defendant are essentially different or antagonistic, each litigant is ordinarily deemed a party within the contemplation of the statute and entitled to the full number of peremptory challenges. *Christoff* v. *Dugan*, 39 Ohio App., 475; 50 Corpus Juris Secundum, 1071, Section 281.

The question presented therefore is whether the defenses of Merchants and Contractor are diverse or antagonistic. In this regard, the pleading of each of the responding defendants discloses allegations which, if supported by the evidence and accepted by the jury, would absolve it from liability to the detriment of the other defendant. In its sixth defense, the defendant Contractor, in addition to denying negligence, alleges "that said excavation was completed in accordance with the agreement entered into between plaintiff and the defendant association [Merchants] and upon direct instructions of the defendant association; that the responsibility for the shoring and support of the plaintiff's building was assumed by the plaintiff and the defendant association during the removal of the old wall and the construction of the new party wall. Defendant [Contractor] further says that the responsibility for the excavation beyond the depth of nine feet was that of the adjoining landowner [Merchants]; and that this defendant, not being the owner of the adjoining land, had no responsibility for said excavation."

Defendant Merchants admits that it entered into a written agreement with the plaintiff but denies negligence or any liability under Section 723.49, Revised Code, and specifically alleges, in its second defense, that defendant Contractor "was an independent contractor and all excavation and construction

done on this defendant's premises were made by said contractor and by the contractor's own agents and employees, and this defendant had no right, nor did it attempt to exercise any right, to control or direct the manner in which such work was done.''

It thus appears that each defendant, in addition to claiming that the plaintiff was not entitled to recovery at all, was also interested in showing that the other defendant was alone liable to the plaintiff. The question of ultimate liability was clearly raised by each of the defendants to this action, and the issues finally drawn by the pleadings would have permitted either defendant to present evidence which was detrimental to the other. In addition to the principal controversy between the plaintiff and both defendants, the pleadings injected a separate controversy into the case between the defendants. And judging by the pleadings, which was the only guide before the trial court when it ruled on the allowable number of peremptory challenges, the defenses asserted by counsel for each of the defendants did not necessarily have to stand or fall together. In our opinion therefore each defendant was entitled to a separate voice in the selection of the jury. The first assignment of error is overruled.

The second assignment of error questions the manner in which the jury was selected.

When the original venire was exhausted, the following exchange took place:

''Mr. Schwer: If your Honor please, pursuant to Section 2313.30 we would like to have the court issue a special venire and also request that it be drawn from the wheel.

''Mr. Cole: We have no objection your Honor, we only suggest that the court draw from the venire as he sees fit. That it will not be out of the wheel in any event.

''The Court: The court is not too well acquainted with all of the difficulties to get the jurors to serve, particularly talesmen, I wouldn't know who to get really, personally, so I will order 25 names drawn to appear tomorrow morning for a continuation of voir dire examination to secure a jury.

''Mr. Cole: Exception.''

Thereafter, the court secured the additional jurors under the authority of Section 2313.26, Revised Code, which provides in part:

"At any time, during the term of a court of record, the court may order an additional number of jurors to be drawn by the commissioners of jurors for the term, or for part of a term, at which the order is made, *or for immediate service in a particular case. * * *"* (Emphasis ours.)

The plaintiff now contends that his suggestion made it incumbent upon the court to select the jury pursuant to Section 2313.39, Revised Code, which provides:

"When it is necessary to summon talesmen, the court, on the motion of either party, shall select them, and immediately issue a venire for as many persons having the qualifications of a juror as, in the opinion of the court, are necessary, which persons shall appear forthwith, or at such times as fixed by the court. No person known to be in or about the courthouse shall be selected without the consent of both parties."

In support of this contention, the plaintiff cites the following cases: *Dayton* v. *State*, 19 Ohio St., 584; *Passenger Railroad Co.* v. *Young*, 21 Ohio St., 518; *Stair* v. *State*, 20 Ohio Law Abs., 170; *Bach* v. *State*, 38 Ohio St., 664; *State* v. *Barlow*, 70 Ohio St., 363; *Railway Co.* v. *Brescia*, 100 Ohio St., 267. We have examined each of those cases and the statutes in effect when those cases were decided and find none which have any authoritative bearing upon the question presented in the case at bar. More applicable here, in our opinion, is the case of *Hosbrook* v. *Loveland & Cincinnati Traction Co.*, 5 C. C. (N. S.), 209, 17 C. D., 42, affirmed, 75 Ohio St., 584, where one of the concurring judges, after referring specifically to Section 5173 Revised Statutes (now Section 2313.39, Revised Code) said at page 216:

"Why, then, are not jurors drawn from the wheel *talesmen* in a sense to satisfy every requirement of the law? Why should the judge in making his selection not have recourse to the wheel as well as to the city directory or his own recollection.

"The word 'tales' from the Latin '*talis*' means *such, like*; in this connection signifies such men or men of like qualifications with those of the original panel, and there is no suggestion that the men here used were not such.

"If it is urged that the selection of talesmen requires an exercise of judgment or discretion on the part of the trial judge,

*non constat*, but that it was the exercise of such discretion and the deliberate judgment of the judge that he would select the names in this manner. The wheel is brought in by the sheriff and the clerk and in the presence of the judge the names are drawn, the judge thereby makes it his act, and it seems to me that the rights of the parties are in the highest sense safeguarded.''

The reasoning of that case is convincing, but in the present action, both sides have argued and briefed the question as though the court did not have recourse to the wheel in selecting talesmen pursuant to Section 2313.39, Revised Code. Assuming this to be true for the purpose of discussion, the obligation of the trial court under such section was nonetheless subject to the qualification—''when it is necessary to summon talesmen.'' This does not mean that the court may not use an alternative statutory means of securing additional jurors when it is not necessary to summon talesmen. Here the original venire was exhausted in late afternoon, and no unusual delay resulted from the manner in which additional jurors were selected.

Furthermore, since the obvious intent and purpose of the Legislature is most completely effected by selecting as many jurors as possible from names drawn from the wheel, the alternative modes of selection provided by Sections 2313.38 and 2313.39, Revised Code, being creatures of necessity and for the purpose of implementation, must be construed *in pari materia* with Section 2313.26, Revised Code.

But the plaintiff contends further that even if the trial court did properly use the method of selection of additional jurors afforded by Section 2313.26, Revised Code, it did not comply with its provisions in that the order of the court failed to specify the time and place of drawing. This claim would have considerably more merit under different circumstances. But here, the record discloses that the court recessed for the day at 3:40 p. m., and only a few minutes before advised counsel that ''I will order 25 names drawn to appear tomorrow morning for a continuation of *voir dire* examination to secure a jury.'' Under such circumstances, the plaintiff's argument that he was denied the opportunity to be present at the drawing is untenable. And regardless, there is no affirmative showing in the record that the omission, in the court's order, of the time and

place of the drawing was prejudicial to the rights of the plaintiff in the subsequent selection of a jury or in the trial of the case. The second assignment of error is overruled.

In their answer briefs, the defendants contend that the next seventeen assignments of error, even if supported by the record, could not have been prejudicial to the rights of the plaintiff because of the jury's response to an interrogatory on the question of damages.

The jury was asked: "What was the value of plaintiff's property immediately before the collapse and what was its value after the collapse or collapses?" The answer, signed by nine members of the jury, is that its value both before and after the collapse was $45,000. In this regard, it is significant that none of the errors assigned by the plaintiff attack either the evidence presented at the trial or the charge of the court on the element of damages.

In reply to the defendants' argument, the plaintiff contends that the jury's finding that there was no difference in the value of the property immediately before and after the collapse is not sustained by the evidence and "is manifestly contrary not only to the weight of the evidence but to the opinion of each and every witness who was called on to testify."

The record discloses, however, that the jury was apparently impressed by the witness Goodrich because its answer to the interrogatory on the question of damages is directly responsive to his testimony. And since the jury had the right to rely upon his testimony to the exclusion of other testimony upon this issue, the complaint that the finding was against the weight of the evidence cannot be sustained.

It thus appears that the jury's finding against the plaintiff on the essential element of damages would eliminate any possibility of prejudice to him from the other errors assigned in this appeal. Section 2309.59, Revised Code; 4 Ohio Jurisprudence (2d), 18, Section 829.

However, since the parties to the action have briefed and argued the other assignments of error, we have also proceeded to consider them. The record has been examined and re-examined with particular reference to each, and we are unable to find any error in the record which, in our opinion, would have ma-

terially affected the outcome of this case or might have justified a reversal of the judgment of the trial court.

In the trial of almost all cases of some consequence errors are committed, but a party may not successfully complain unless he is prejudiced thereby. In the present case, the jury's answers to interrogatories properly submitted to it upon crucial issues show consistency, and each has ample and reasonable support from the evidence.

We find no assignment of error well made. The judgment is affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.

(Decided July 19, 1962.)

ON MOTION by appellant for diminution of the record.

*Per Curiam.* This matter is submitted on the plaintiff's motion for diminution of the record. The motion was filed on June 30, 1962, and seeks to have incorporated into the bill of exceptions statements made by the trial court while it was considering and ruling upon the motions of each defendant for a directed verdict and upon the motion of plaintiff for leave to amend his petition at the close of plaintiff's case in chief.

A similar motion was filed on January 31, 1962. At that time this court concluded that the statements sought to be incorporated into the record had no determinative bearing upon any issue raised by the assignments of error, and proceeded therefore to consider the appeal. However, no entry was filed overruling the motion for diminution of the record made on January 31, 1962. The decision of this court affirming the judgment of the trial court was announced on June 8, 1962.

Upon consideration of the motion filed on June 30, 1962, we are further convinced that a remand to the trial court for the purpose of formally incorporating parts of the trial court's decision upon motions made during trial into the bill of exceptions would not result in a different conclusion from the one announced by this court on June 8, 1962. See *O'Leary, Exr.,* v.

*Burnett,* 87 Ohio App., 368, paragraph three of the syllabus. The motion is therefore overruled.

Accordingly, counsel may submit entries overruling each of the two motions for diminution of the record which are now pending in this cause, and after such entries are journalized, the entry affirming the judgment of the Common Pleas Court pursuant to the decision rendered on June 8, 1962, may be filed.

*Motion overruled.*

CRAWFORD, P. J., KEARNS and SHERER, JJ., concur.

(Decided October 11, 1962.)

ON MOTION to certify record.

*Per Curiam.* This matter is before the court upon the motion of the plaintiff for certification of the record in this case to the Supreme Court of Ohio for review and final determination, on the ground that the judgment entered herein is in conflict with judgments pronounced by other Courts of Appeals of Ohio in twenty-five different cases.

After examining each of the cited cases, we are in general agreement with the fundamental rules applied therein, but upon evaluation, we are unable to bring the facts of any of those cases into recognizable focus with the facts of the present case.

In our opinion, none of the cited cases will support the issuance of a certificate of conflict.

The motion, therefore, is overruled.

*Motion overruled.*

CRAWFORD, P. J., KERNS and SHERER, JJ., concur.