LeFort, Admx., et al., Appellees and Cross-Appellants, *v.*
Century 21-Maitland Realty Co. et al., Appellants and
Cross-Appellees.

[Cite as LeFort *v.* Century 21-Maitland Realty Co. (1987),
32 Ohio St. 3d 121.]

(No. 86-959—Decided August 19, 1987.)

*Donald E. Caravona* and *Mark J. Obral,* for appellees and cross-appellants.

*Frank S. Hurd* and *Maureen Murphy; James T. Millican II; George W. Lutjen; Hugh M. Stanley, Jr.* and *Irene C. Keyse-Walker,* for appellants and cross-appellees.

MAHONEY, J.

I

The first issue presented for our consideration is whether a trial court commits reversible error when it violates the express mandate of Civ. R. 47(C) by failing to discharge an alternate juror at the time the jury retires for deliberations and when it then substitutes an alternate juror for

an incapacitated regular juror after deliberations have begun.

Maitland, Active, Cardinal, and Nationwide concede that the trial court violated Civ. R. 47(C), which provides in part that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." They contend, however, that such violation does not constitute reversible error. For support, they rely on *United States* v. *Hillard* (C.A. 2, 1983), 701 F. 2d 1052, certiorari denied (1983), 461 U.S. 958. In *Hillard,* the Second Circuit Court of Appeals ruled at 1058 that "a violation of Rule 24(c) [which is essentially equivalent to Ohio Civ. R. 47(C)] does not require reversal *per se,* absent a showing of prejudice." In so holding, the Second Circuit reasoned: "The trial below had lasted over three weeks, involved nine defendants, and filled over two thousand pages of transcript. The district judge made painstaking efforts to minimize the potential prejudice to the defendants, and determined after the verdict that no prejudice had been sustained." *Hillard, supra,* at 1061.

The "painstaking efforts" to which the *Hillard* court referred included the alternate's reaffirmation that he could deliberate fully and fairly with the original jurors and the trial court's instruction to the "reconstituted" jury to begin deliberations anew. *Id.* at 1057. The Second Circuit additionally found that the defendants had sustained no actual prejudice as demonstrated by the "reconstituted" jury's having deliberated for more than two days and having asked for numerous exhibits, excerpts of testimony, and further instructions. *Id.*

We agree with the court of appeals that this case does not fall squarely within the facts of *Hillard.* The trial in this case, similar to the trial in *Hillard,* lasted eighteen days, involved twenty-eight witnesses, and over twenty-three hundred pages of transcript. However, the record does not reveal that the trial court in this case made any "painstaking efforts" to ensure that the defendants would suffer no prejudice. Specifically, the record does not indicate that the trial court instructed the jury to deliberate anew following the substitution or that the alternate reaffirmed his ability to deliberate fully and fairly with the regular jurors. Further, the parties agree, following the substitution, the jury deliberated for only several hours whereas the jury in *Hillard* convened for two days after the substitution.

Regardless, it is not necessary for us to determine at this time the applicability of the *Hillard* rule to Ohio cases because we find that the jury verdicts must be sustained as the LeForts waived any objections they might have had to the substitution. An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41, 70 O.O. 2d 123, 322 N.E. 2d 629. See, also, *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364. The record discloses that the LeForts had the opportunity to object to the substitution but failed to do so. It further shows that all parties knew of the substitution prior to the time the jury reached its verdicts. Likewise, the record further reveals that the LeForts requested that the trial court poll the jurors as to the general verdicts but specifically declined a poll as to the interrogatories. The trial court, additionally, prior to acceptance of the answers to interrogatories and general verdicts, inquired

as to any reason why it should not accept them. The LeForts, again, remained silent. As the LeForts failed to object to the trial court's substitution, we hold that the error was waived.

The LeForts, moreover, may not rely upon the "plain error" exception to the waiver rule. The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial. *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 223, 18 OBR 281, 284, 480 N.E. 2d 802, 805; *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 209, 24 O.O. 3d 316, 317, 436 N.E. 2d 1001, 1003. The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 275, 18 OBR 322, 327-328, 480 N.E. 2d 794, 800.

The LeForts have failed to demonstrate to this court's satisfaction that a manifest miscarriage of justice did result from the trial court's violation of Civ. R. 47(C) and subsequent substitution of an alternate juror for an incapacitated juror after deliberations had begun. Arguably, a suggestion of prejudice arises when an alternate is substituted without any precautionary instructions by the trial judge. However, in this case, there is no suggestion in the record of any coercive effect upon the alternate or of any other prejudicial effect. Further, the interrogatories clearly indicate that even without the signatures of the alternate or incapacitated juror, a three-fourth's majority found no misconduct on the part of Nationwide or Cardinal as to the claims of any of the four plaintiffs. The interrogatories additionally indicate that even absent the alternate's signature, a three-fourth's majority found Anna to be the sole proximate cause of her own injuries. The record further shows that no prejudice resulted to the claims of Sherry or Shawn as the jury deliberated those claims on Monday, after the alternate had been impanelled.

However, the interrogatories finding that Maitland and Active committed no misconduct as to David's claim were both signed on Friday by six of the jurors, including Boehm. Yet, seven of the eight jurors, including Boehm, found that David's negligence was a proximate cause of his own injuries while only six of the eight, including Boehm, found David's negligence to be the sole proximate cause of his injuries. We note that the trial court instructed the jury to consider each applicable interrogatory before reaching its general verdicts. The alternate then, on Monday, affixed his name to a general verdict finding in favor of each defendant on David's claims. It may be presumed that the alternate followed the court's instruction and considered the interrogatories relating to David's claims before signing his name to the general verdict form. See *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Grambo* (1921), 103 Ohio St. 471, 478, 134 N.E. 648, 650; *State* v. *Dunkins* (1983), 10 Ohio App. 3d 72, 73, 10 OBR 82, 84, 460 N. E. 2d 688, 690.

This presumption is bolstered by the fact that when the court, at the LeForts' request, polled the jurors as to their general verdicts, the alternate stated in open court that it was his verdict (it being understood it was arrived at after consultation with the other jurors) to find in favor of the defendants and against David. There is no suggestion in the record that the alternate was coerced or in any way unduly influenced in reaching his deci-

sion. In conclusion, we find that the prejudice, if any, resulting from Boehm's signatures, which constituted parts of the three-fourth's majority on some interrogatories, does not rise to such a level as would constitute a manifest miscarriage of justice. Accordingly, there being no "plain error," we hold that the plaintiffs waived the error regarding juror substitution by not objecting to and participating in the rule-violating procedures.

## II

The next question presented for our consideration is whether the trial court violated Civ. R. 47(B) by granting three peremptory challenges to each of the four defendants as well as Maitland's and Active's agents in this case. Civ. R. 47(B) provides in pertinent part: "In addition to challenges for cause provided by law, each party peremptorily may challenge three jurors. If the interests of multiple litigants are essentially the same, 'each party' shall mean 'each side.'"

*Chakeres* v. *Merchants & Mechanics Federal S. & L. Assn.* (1962), 117 Ohio App. 351, 24 O.O. 2d 131, 192 N.E. 2d 323, summarizes the current status of the law with respect to peremptory challenges in civil cases. *Chakeres* provides at 355, 24 O.O. 2d at 133, 192 N.E. 2d at 326:

"Under statutes which allow a specific number of challenges to 'each party,' the majority view is that those who have identical interests or defenses are to be considered as one party and therefore only collectively entitled to the number of challenges allowed to one party by the statute. * * * However, if the interests of the parties defendant are essentially different or antagonistic, each litigant is ordinarily deemed a party within the contemplation of the statute and entitled to the full number of peremptory challenges. * * *"

This court, in *Nieves* v. *Kietlinski* (1970), 22 Ohio St. 2d 139, 51 O.O. 2d 216, 258 N.E. 2d 454, adopted the *Chakeres* rule and found that multiple plaintiffs who filed a common complaint, relied upon a singular statement of facts, and employed the same attorney to represent them could properly be considered a single party for the purposes of determining the proper number of peremptory challenges.

By contrast, the record in this case indicates that each defendant filed separate replies and defenses. Each, as well, was represented by its own counsel. Nationwide and its agent, moreover, the record indicates, filed a separate motion for partial summary judgment wherein they alleged that they owed the LeForts no duty to inspect the home or warn of hazardous conditions. Each defendant, additionally, could attempt to prove that its conduct did not constitute negligent misrepresentation. Each defendant asserted allegations which, if proved, would absolve it from liability to the detriment of the others. In sum, the defenses asserted did not necessarily stand or fall together. See *Chakeres, supra,* at 356, 24 O.O. 2d at 133, 192 N.E. 2d at 326. Each defendant, therefore, pursuant to Civ. R. 47(B), was entitled to three peremptory challenges.

The record further indicates that no prejudice resulted from the trial court's having granted three peremptory challenges to Active's agent and three together to both of Maitland's agents, as no corporate defendant together with its agent or agents actually exercised more than three peremptory challenges.

## III

The final issue presented for our

consideration is whether the trial court erred in denying Nationwide's motion for directed verdict, as the evidence failed to establish that Nationwide conspired with Active, Maitland, and Cardinal to defraud the LeForts.

Conspiracy has been defined as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. *Minarjk* v. *Nagy* (1963), 8 Ohio App. 2d 194, 196, 93 Ohio Law Abs. 166, 168, 26 O.O. 2d 359, 360, 193 N.E. 2d 280, 281. The ultimate fact of conspiracy is solely a question for the jury, unless the court can say, as a matter of law, that there is no proof tending to establish a conspiracy. *Liston* v. *Statler* (1917), 9 Ohio App. 398, 401.

In the present case, there was evidence tending to establish that Nationwide had conspired with Cardinal, Active, and Maitland to induce the LeForts to purchase an electrically defective home. Anna testified at trial that her State Farm agent had inspected the home but refused to insure it because of defective electrical wiring. Anna further testified that she spoke to real estate agents from Maitland and Active about her inability to procure fire insurance. The agents, according to Anna, told her that the house had been inspected. The Maitland agent then told her that a friend of hers from Nationwide would insure it. Anna added that the Nationwide agent told her that he would insure it, that the house had been inspected, and that there was "no problem" with the house. Anna stated that the Nationwide agent had relied on the real estate agents for this information. The insurance policy additionally indicates that Nationwide back-dated the insurance binder two months so that it would coincide close to the date title to the house was transferred to the LeForts. Therefore, the trial court properly denied Nationwide's motion for a directed verdict.

Accordingly, the judgment of the court of appeals is reversed, and the trial court's judgment is hereby reinstated.

*Judgment accordingly.*

MOYER, C.J., GEORGE, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MAHONEY, J., of the Ninth Appellate District, sitting for SWEENEY, J.

GEORGE, J., of the Ninth Appellate District, sitting for LOCHER, J.