BRANCH, APPELLEE, *v.* CLEVELAND CLINIC FOUNDATION, APPELLANT.

[Cite as *Branch v. Cleveland Clinic Found.*,

**134 Ohio St.3d 114, 2012-Ohio-5345.]**

*Medical-malpractice trial—Late production of demonstrative evidence—Adverse inference when evidence is not produced—Jury instruction regarding different methods of treatment.*

(No. 2011-1634—Submitted June 20, 2012—Decided November 21, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 95475, 2011-Ohio-3975.

_____

MCGEE BROWN, J.

{¶ 1} This appeal involves three rulings in a medical-malpractice trial. Appellee, Margaret Branch, suffered a stroke during brain surgery performed at appellant, the Cleveland Clinic. As a result, Branch sued the clinic, claiming that its surgeon had struck a ventricle, causing the stroke.

{¶ 2} Following a jury trial, a verdict was entered for the clinic. Branch appealed, and the Eighth District Court of Appeals found abuses of discretion in three rulings of the trial court. *Branch v. Cleveland Clinic Found.*, 8th Dist. No. 95475, 2011-Ohio-3975, 2011 WL 3505286. The court of appeals found that the trial court abused its discretion in (1) allowing the clinic to use demonstrative evidence recreating the surgery that was provided to counsel for Branch ten minutes before the expert using it testified, (2) ordering counsel for Branch not to argue an inference that because the best piece of evidence—a computerized image prepared prior to the surgery—was not saved, it must have been adverse to the clinic, and (3) instructing the jury that evidence of alternative medical approaches

was not evidence of negligence, because no evidence of recognized alternate methods of treatment was presented.

{¶ 3} The clinic now argues that the Eighth District's decision was, in each of these respects, "legally and factually flawed" and inconsistent with our precedent. We agree. Based on the record before us, the trial court did not abuse its discretion in any of the rulings at issue. Therefore, we reverse the judgment of the Eighth District Court of Appeals and reinstate the jury verdict for the clinic.

*Background*

{¶ 4} Evidence at trial demonstrated that Branch is a highly accomplished attorney with a long history of advocating for injured plaintiffs. Prior to the surgery, Branch and her husband, Turner Branch, managed a law firm with approximately 30 staff members and 8 attorneys in Albuquerque, New Mexico.

{¶ 5} Branch testified, however, that in 2003 she noticed symptoms of a neurological disorder known as cervical dystonia. The condition irresistibly drew her head downwards and to the right, causing severe spasms and pain. It led to serious struggles in Branch's career, personal life, and mental health.

{¶ 6} As the condition took its toll, Branch learned that the clinic offered a new procedure for dystonia, known as deep-brain stimulation ("DBS"). In DBS, surgeons implant electrodes within the brain to defeat destructive brain impulses such as those causing dystonia. After consulting with clinic physicians, Branch elected to undergo the surgery.

{¶ 7} During surgery, Branch suffered a stroke that caused significant damage to her physical and cognitive abilities. Branch then sued the clinic, contending that the clinic committed medical negligence that caused permanent brain damage, partial paralysis, impaired vision and speech, lost ability to pursue her chosen occupation, and severe pain and suffering.

**{¶ 8}** At one time, the complaint also included counts of lack of informed consent and negligent credentialing, as well as a loss-of-consortium claim for Branch's husband, Turner. Before trial, however, Branch dropped all these claims except for a portion of the lack-of-informed-consent claim relating to the experience, knowledge, and identity of the doctors performing Branch's surgery.

**{¶ 9}** After a two-week trial, a unanimous jury found for the clinic. Branch appealed, and the Eighth District identified three abuses of discretion that warranted reversal and a new trial. *Branch*, 2011-Ohio-3975.

**{¶ 10}** The first error related to the clinic's use of demonstrative evidence. Branch argued at trial that the clinic improperly failed to retain a three-dimensional mapping of her brain that was created before the surgery to assist the surgeon in directing the probe that would be inserted into her brain. The clinic admitted that the surgeon had not saved the electronic image, but countered that it had kept all the surgeon's notes detailing the surgical procedure.

**{¶ 11}** To illustrate the point, the clinic produced a three-dimensional computer simulation of the brain mapping, using data it had retained from the surgeon's notes regarding Branch's procedure. Branch objected, claiming that the simulation was prejudicial and that the clinic had not provided adequate notice of its intent to offer the exhibit. After discussion with counsel, the trial court permitted the clinic to use the exhibit. The Eighth District, however, concluded that the late admission of the evidence prejudiced Branch because she had no opportunity to prepare effective cross-examination. *Branch*, 2011-Ohio-3975, at ¶ 18, 27.

**{¶ 12}** The second error identified by the Eighth District also involved the surgery plan. At trial, the clinic explained that its computer systems automatically deleted surgery plans unless clinic employees affirmatively saved them, which

they typically did for clinical studies only. Branch, however, suggested that the clinic's failure to save the plan after a significant complication was suspicious.

{¶ 13} The trial court allowed Branch to refer to this failure repeatedly. But when Branch's counsel began to argue in closing that the failure to maintain the plan was suspicious and compared the clinic's action to BP's destruction of safety plans after the disastrous 2010 oil spill in the Gulf of Mexico, the trial court ordered Branch to "avoid that topic" because "there's no suggestion that there's anything willful about the destruction of any documents." Branch claims that this directive effectively prevented her from seeking an adverse inference that the plan would have been unfavorable to the clinic, because the clinic had failed to save it. The Eighth District agreed and found that the trial court abused its discretion in the ruling. *Branch*, 2011-Ohio-3975, at ¶ 63-64.

{¶ 14} The third and final error identified by the Eighth District related to an instruction given by the trial court at the clinic's request that informed the jury that alternative methods could be used and that the use of one medical approach rather than another did not necessarily constitute negligence. The Eighth District determined that this instruction was not appropriate because the dispute turned on whether a clinic surgeon had violated a standard of care and thus had caused the bleed by improperly striking Branch's ventricle, a vascular structure in the brain. *Id.* at ¶ 49, 51, 54. Therefore, according to the Eighth District, the issue before the jury was not whether the clinic had employed the best of several appropriate medical methods, but rather, whether the method chosen was properly performed. *Id.* at ¶ 51-52.

{¶ 15} The clinic appealed, and this court accepted review. 131 Ohio St.3d 1410, 2012-Ohio-136, 959 N.E.2d 1055.

*Admission of Demonstrative Evidence*

{¶ 16} The clinic's first proposition of law alleges that the Eighth District's decision disallowing the use of demonstrative evidence at the trial was both legally and factually flawed.

{¶ 17} In considering this proposition, we are mindful that a trial court is in the best position to make evidentiary rulings and that an appellate court should not substitute its judgment for that of the trial judge absent an abuse of discretion. *Vogel v. Wells*, 57 Ohio St.3d 91, 95, 566 N.E.2d 154 (1991) (a trial court did not abuse its discretion when it allowed a videotaped reconstruction of an accident to be admitted into evidence); *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999) (a trial court did not abuse its discretion when it allowed a video recreation of a bloodhound's path in tracking a suspect to be admitted into evidence). We do not, however, defer to trial court rulings that are unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 18} In this case, the trial judge carefully reviewed both parties' arguments and was well aware of the issue's importance. Indeed, before exercising his discretion to allow the demonstration, the judge explained that it was a "tough" decision. The result was not an abuse of discretion. Branch was permitted to use an exhibit that the trial court deemed to be comparable to the clinic's exhibit. Branch's counsel had access to the same notes that the clinic used in preparing its demonstrative aid, and we defer to the trial court's judgment that counsel for Branch had adequate opportunity to cross-examine clinic doctors with respect to the exhibit despite the minimal notice.

{¶ 19} We conclude that the trial court reasonably exercised its discretion in allowing the clinic's demonstration. That court's decision was far from unreasonable, arbitrary, or unconscionable. The Eighth District's ruling to the contrary was in error.

*Adverse Inference*

**{¶ 20}** The clinic next argues that the Eighth District erred in finding that Branch was unable to argue an adverse inference of negligence after the trial court refused to allow her to refer to the BP oil disaster during closing arguments.

**{¶ 21}** In other words, the clinic challenges the Eighth District's determination that Branch was entitled to argue an adverse inference arising from the clinic's failure to retain the plan developed for surgery. The Eighth District stated that an adverse inference that the missing evidence would be unfavorable to the party who failed to produce it arises " ' "where there is relevant evidence under the control of a party who fails to produce it without satisfactory explanation." ' " *Branch*, 2011-Ohio-3975, at ¶ 62, quoting *Cherovsky v. St. Luke's Hosp. of Cleveland,* 8th Dist. No. 68326, 1995 WL 739608, *7 (Dec. 14, 1995), quoting *Signs v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 94AP105-628, 1994 WL 663454, *2 (Nov. 22, 1994). The issue here, however, was not that the clinic failed to produce evidence in its control, but that Branch disagreed with the clinic's standard practice of deleting surgical plans. The clinic produced the written records from the surgery that detailed the path the surgeon had used in inserting the probe into the brain.

**{¶ 22}** More importantly, the trial court did not prevent Branch from actually arguing for the adverse inference. The order to avoid references to the topic occurred just moments before the end of Branch's closing argument. Up until that point, Branch referred to the missing records repeatedly. The trial court did not forbid the jury from considering Branch's argument in this respect.

**{¶ 23}** The trial court was well within its discretion to determine the boundaries of closing argument absent an abuse of discretion. *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990). The Eighth District's ruling to the contrary was in error.

*Jury Instruction Regarding Different Methods*

**{¶ 24}** Finally, the clinic argues that the Eighth District erred in "disallowing the different methods jury instruction." We agree.

**{¶ 25}** We have previously reviewed the role of the "different methods" jury instruction in medical-malpractice cases. *Pesek v. Univ. Neurologists Assoc., Inc.*, 87 Ohio St.3d 495, 498, 721 N.E.2d 1011 (2000). In *Pesek*, we explained that the instruction is "grounded 'on the principle that juries, with their limited medical knowledge, should not be forced to decide which of two acceptable treatments should have been performed by a defendant physician.' " *Id.*, quoting Dailey, *The Two Schools of Thought and Informed Consent Doctrines in Pennsylvania: A Model for Integration*, 98 Dickinson L.Rev. 713, 713 (1994).

**{¶ 26}** We held in *Pesek* that the different-methods charge is appropriate only if "there is evidence that more than one method of diagnosis or treatment is acceptable for a particular medical condition." *Id.* at syllabus. Regardless, we found that the trial court erred in giving the instruction in that case because no acceptable alternative methods of treatment were presented; instead, *Pesek* turned on a classic misdiagnosis. *Id.* at 499.

**{¶ 27}** The Eighth District found that it was error to give the different-methods instruction in this case because Branch claimed that the clinic's surgeon was negligent in striking the ventricle wall. *Id*. at ¶ 51. The surgeon denied, however, that he had struck the ventricle wall. In other words, the dispute turned on facts, not legal theories. However, this analysis oversimplifies what transpired at trial. In fact, the parties' experts raised a number of questions regarding how different planning and procedures could have prevented the stroke, all of which required the jury to determine whether another medical approach would have been preferable.

**{¶ 28}** For example, the parties disputed whether the clinic's planned trajectory into Branch's brain was dangerously close to vascular structures in the

middle of her brain; Branch's experts proposed an alternative trajectory that they claim would have been safer. Similarly, Branch's experts challenged the clinic's approach in creating the map of Branch's brain for surgery and testified to an alternative mapping strategy that the clinic could have employed. Likewise, Branch's experts questioned whether the clinic's surgeon conducted too many "tracks" into Branch's brain while searching for the best site for electrode placement. With respect to each of these issues, medical professionals in the case disagreed about the best method of performing the surgery.

{¶ 29} In short, Branch raised a number of questions about whether the clinic adopted the correct medical approach in her surgery despite the existence of alternative methods. These questions fall outside the limited medical knowledge that we expect of juries. Therefore, the trial court did not err in allowing the different-methods instruction.

*Conclusion*

{¶ 30} Based on the foregoing, we conclude that the trial court did not abuse its discretion in any of the three rulings at issue. Accordingly, we reverse the decision of the Eighth District Court of Appeals, and we reinstate the jury verdict for the clinic.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 31} In this case, we review a court of appeals' review of a trial court's evidentiary and jury-instruction decisions. Our holding is that "the trial court did not abuse its discretion in any of the three rulings at issue." Undoubtedly, this case is a matter of great personal interest for the Branches and a matter of great

corporate interest for the Cleveland Clinic Foundation, but it does not meet this court's jurisdictional requirement of a case "of public or great general interest." Ohio Constitution, Article IV, Section 2(B)(2)(e).  I would hold that jurisdiction was improvidently allowed in this case.

_____

Paul W. Flowers Co., L.P.A., and Paul Flowers; and Becker Law Firm and Michael Becker, for appellee.

Roetzel & Andress, L.P.A., Douglas G. Leak, Anna Moore Carulas, and Ingrid Kinkopf-Zajac, for appellant.

_____