[Cite as *O'Loughlin v. Mercy Hospital Fairfield*, 2015-Ohio-152.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EMMETT O'LOUGHLIN, a Minor, | : | APPEAL NO. C-130484 |
| | | TRIAL NO. A-1100372 |
| DARA O'LOUGHLIN, Individually and as Parent and Natural Guardian of Emmett O'Loughlin, | : | |
| | : | *O P I N I O N.* |
| and | : | |
| JAMES O'LOUGHLIN, Individually and as Parent and Natural Guardian of Emmett O'Loughlin, | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| MERCY HOSPITAL FAIRFIELD, | : | |
| MERCY HEALTH PARTNERS OF SOUTHWEST OHIO, | : | |
| KAREN HAUSER, R.N., | : | |
| AMY RISOLA, R.N., | : | |
| LORI TRAMMEL, R.N., | : | |
| JUDY FRY, R.N., | : | |
| DANIEL CLIFFORD BOWEN, M.D., | : | |
| and | : | |
| THE PROFESSIONAL ORGAN-IZATION OF DANIEL CLIFFORD BOWEN, M.D., | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 21, 2015

*Paul W. Flowers Co.*, *Paul W. Flowers*, *The Becker Law Firm*, *Michael F. Becker*, *Pamela Pantages* and *John H. Metz*, for Plaintiffs-Appellants,

*Rendigs, Fry, Kiely & Dennis, LLP*, *Jeffrey M. Hines*, *Thomas M. Evans* and *Karen A. Carroll*, for Defendants-Appellees Mercy Hospital Fairfield, Mercy Health Partners of Southwest Ohio, Karen Hauser, R.N., Amy Risola, R.N., Lori Trammel, R.N., and Judy Fry, R.N.,

*Calderhead, Lockemeyer & Peschke*, *David C. Calderhead* and *Joel L. Peschke*, for Defendants-Appellees Daniel Clifford Bowen, M.D., and the Professional Organization of Daniel Clifford Bowen, M.D.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Judge.**

{¶1}    Plaintiff-appellant Emmet O'Loughlin, a minor, suffered a traumatic brain injury at birth.  Emmet and his parents, plaintiffs-appellants Dara and James O'Loughlin, sued defendants-appellees Dr. Daniel Bowen, the doctor that delivered Emmet, Dr. Bowen's practice group, the hospital where Emmet was born, Mercy Fairfield, and four obstetrical nurses assisting in the labor and delivery of Emmet for medical malpractice.  Following a four-week jury trial, the trial court entered judgment in favor of Dr. Bowen and his practice group and Mercy Fairfield and its nurses.  The O'Loughlins now appeal, asserting six assignments of error.  For the following reasons, we affirm the trial court's judgment.

### Peremptory Challenges

{¶2}    In their first assignment of error, the O'Loughlins contend that the trial court abused its discretion and thus, skewed the jury-selection process by allowing "the aligned defendants" to each exercise three peremptory challenges.

{¶3}    Civ.R. 47(C) provides that "each party peremptorily may challenge three prospective jurors.  If the interests of multiple litigants are essentially the same, 'each party' shall mean 'each side.' "  In *LeFort v. Century 21-Maitland Co.*, 32 Ohio St.3d 121, 125, 512 N.E.2d 640 (1987), citing *Chakeres v. Merchants & Mechanics Fed. S. & L. Assn.*, 117 Ohio App. 351, 355, 192 N.E.2d 323 (2d Dist.1962), the Ohio Supreme Court held that

> [u]nder statutes which allow a specific number of challenges
> to 'each party,' the majority view is that those who have
> identical interests or defenses are to be considered as one

party and therefore only collectively entitled to the number of challenges allowed to one party by the statute. * * * However, if the interests of the parties defendant are essentially different or antagonistic, each litigant is ordinarily deemed a party * * * and entitled to the full number of peremptory challenges.

{¶4} In *LeFort*, the court held that the defendants were each entitled to three peremptory challenges, because (1) each defendant had been represented by its own counsel; (2) each defendant had filed separate replies and defenses; and (3) one of the defendants had filed a separate motion for partial summary judgment, alleging they had owed no duty to the plaintiffs. *Id.*

{¶5} In *Bernal v. Lindholm*, 133 Ohio App.3d 163, 727 N.E.2d 145 (6th Dist.1999), the appellate court applied the *LeFort* factors to affirm a trial court's award of nine peremptory challenges to defendants in comparison to the plaintiff's three challenges. There, the court noted that although the defendants promoted a common causation theory, if the jury had rejected that theory, it could have found one of the defendants liable and not the others. Thus, "the defenses asserted did not necessarily stand or fall together." *Id.* at 176, citing *LeFort* at 125.

{¶6} In this case, we find that the trial court did not err in granting each defendant three peremptory challenges. Here, the hospital and the nurses were one party-defendant and Dr. Bowen and his practice group were another party-defendant. Each party was represented by separate counsel, and separate pleadings and motions were filed. With respect to the defenses asserted, we recognize that the shared theory that Dara and James O'Loughlin had been committed to natural

4

childbirth and had refused medical intervention could have exonerated all the defendants. But if the jury had chosen not to accept that theory, it nevertheless could have found one defendant liable and not the other, because Dr. Bowen and the nurses were subject to different standards of care. Thus, the parties' defenses did not necessarily stand or fall together. The first assignment of error is overruled.

### Evidentiary Issues

{¶7} In their second assignment of error, the O'Loughlins maintain that the trial court abused its discretion by refusing to allow them to impeach the credibility of Dr. Bowen with evidence that he had failed to pass his OB/GYN board certification examination.

{¶8} "A trial court is in the best position to make evidentiary rulings and an appellate court should not substitute its judgment for that of the trial judge absent an abuse of discretion." *Branch v. Cleveland Clinic Found.*, 134 Ohio St.3d 114, 2012-Ohio-5345, 980 N.E.2d 970, ¶ 17. An abuse of discretion is more than an error of law or judgment; instead, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶9} The O'Loughlins believed that questioning Dr. Bowen about his failed attempt at board certification was relevant because it related to his credibility. But Ohio courts have held that questions concerning a doctor's failure to pass a board examination are not relevant to his or her credibility in medical-malpractice cases. *See Shoemake v. Hay*, 12th Dist. Clermont No. CA2002-06-048, 2003-Ohio-2782, ¶ 15; *Nash v. Hontanosas*, 12th Dist. Clermont No. CA2001-02-027, 2002-Ohio-1741; *Keller v. Bacevice*, 9th Dist. Lorain No. 94CA005812, 1994 Ohio App. LEXIS 5444

5

(Nov. 30, 1994); *Johnston v. Univ. Mednet*, 8th Dist. Cuyahoga No. 65623, 1994 Ohio App. LEXIS 3495 (Aug. 11, 1994), *overruled on other grounds,* 71 Ohio St.3d 608, 646 N.E.2d 453 (1995) (trial court did not abuse its discretion in finding that questions on cross-examination about doctor's failure to pass pediatrics board certification examination were not relevant to competency or credibility). Mainly because such questioning is not relevant to or determinative of the ultimate issue of whether a particular doctor has breached the applicable standard of care.

{¶10} The O'Loughlins argue that the cases cited above are not persuasive authority because the doctors in those cases were not qualified to testify as experts, as Dr. Bowen was here. But the doctor in *Hay* offered his expert opinion on the ultimate issue of his medical negligence, similar to Dr. Bowen. Dr. Bowen testified as to the facts of what happened before, during and after the alleged malpractice. He only opined, as an expert, that he had met the standard of care; he did not testify as an expert as to the causation of Emmet's injury or any other matter. Further, the jury heard on cross-examination that Dr. Bowen was not board certified, thus leaving the jury to weigh his testimony, as a non-board-certified doctor, with the O'Loughlins' experts, who were board certified.

{¶11} Based on the foregoing, we hold that the trial court did not abuse its discretion by refusing to allow the O'Loughlins to question Dr. Bowen about his failed attempt at board certification.

{¶12} The O'Loughlins also assert that the trial court abused its discretion by not allowing them to question Dr. Bowen about the hospital's concern that he was not board certified. Although they raise this issue, the O'Loughlins did not present any argument to support their assertion. Nevertheless, a review of the record reveals

that the hospital only expressed concern about Dr. Bowen's lack of board certification when he began to teach residents in the hospital's residency program; there had been no concern expressed by the hospital in the previous years, including the year Emmet was born. Thus, because the O'Loughlins' questions were not relevant to whether Dr. Bowen met the standard of care, we cannot say that the trial court abused its discretion in refusing to allow questioning on this issue.

{¶13} The second assignment of error is overruled.

{¶14} In the third assignment of error, the O'Loughlins contend that the trial court abused its discretion when it permitted the defendants "to introduce a highly prejudicial 'refusal of treatment' form that misleadingly suggested that [the O'Loughlins] had waived their legal rights." We find no abuse of discretion and overrule this assignment of error. The defendants did not argue at trial that the O'Loughlins had waived their legal rights. The form was relevant because the O'Loughlins maintained that they did not refuse any necessary treatment during the labor and delivery of Emmet, including a necessary cesarean section. Finally, we cannot see how the presentation of this form to the jury was prejudicial to the O'Loughlins, when they introduced the exhibit themselves and relied on it during the testimony of their experts.

{¶15} Next, in the fourth assignment of error, the O'Loughlins maintain that the trial court further abused its discretion by restricting rebuttal testimony. The record demonstrates that the O'Loughlins wanted to present rebuttal testimony on approximately 15 issues. The court only allowed rebuttal on six of those issues. The O'Loughlins argue that the trial court applied the wrong standard in determining when to allow rebuttal testimony. We hold otherwise.

{¶16} The Ohio Supreme Court has held that "a party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). An abuse of discretion will be found when this right has been unreasonably violated. *Klem v. Consol. Rail Corp.*, 6th Dist. Lucas No. L-09-1223, 2010-Ohio-3330.

{¶17} The record demonstrates that the trial court applied this standard when reviewing the O'Loughlins' request for rebuttal testimony. While the O'Loughlins claim that the trial court refused to permit rebuttal in several highly prejudicial respects, they did not provide argument for each instance. Instead, they only refer to one issue involving Dr. Bowen's testimony, during his case-in-chief, where he testified that Dara had said "no" to a cesarean section, and that he remembered her saying "no" because when she shook her head a "scrunchy" fell out of her hair. Dara wanted to rebut that testimony by explaining that she has never worn a scrunchy and that she could not have said "no" or anything else to Dr. Bowen because an oxygen mask had been strapped to her face at that time. The trial court denied this rebuttal because it determined that the scrunchy was a "collateral detail," and that Dara had already testified during her case-in-chief that she had had an oxygen mask on and that she had not refused a necessary cesarean section. We find that the trial court did not abuse its discretion in refusing rebuttal testimony in this instance. We have no reason to disagree with the trial court that the scrunchy was a "collateral detail," and the record reflects that Dara had already testified that she had been wearing an oxygen mask and thus, could not, and did not, refuse a necessary cesarean section.

{¶18} With respect to the other instances complained of, we have reviewed the record and hold that the trial court did not abuse its discretion in refusing rebuttal testimony on the remaining five issues.

{¶19} The fourth assignment of error is overruled.

### Lack of Informed Consent

{¶20} In their fifth assignment of error, the O'Loughlins maintain that the trial court erred "by sua sponte entering a directed verdict on their claim of informed consent." In their complaint, they alleged, separate and apart from their theory of negligence, that damages were owed as a result of Dr. Bowen's failure to fully and timely disclose the risk of continuing with a vaginal delivery, and fully explain the necessity of a cesarean section. The trial court determined at the close of evidence that the informed-consent claim was subsumed in the negligence claim, and therefore, it did not instruct the jury on lack of informed consent. We hold that the trial court did not err.

{¶21} We review this assignment de novo. *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83 ¶ 10 (8th Dist.2005). The tort of lack of informed consent is established when: (1) the physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to **the proposed therapy**; (2) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and (3) a reasonable person in the position of the patient **would have decided against the therapy** had the material risks and dangers inherent and incidental to treatment been disclosed to

him or her prior to therapy. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145 (1985), paragraph two of the syllabus.

{¶22} By its definition, a lack-of-informed-consent claim contemplates something more than a failure to disclose; it requires an act against the patient without his or her full knowledge or understanding of the attendant risks of that act. In considering a lack-of-informed-consent claim, Judge Cardozo stated that "the wrong complained of is not merely negligence. It is trespass." *Schloendorf v. Soc. of New York Hosps.*, 211 N.Y. 125, 105 N.E. 92 (1914). Here, Dr. Bowen did not trespass on his patient. Dr. Bowen recommended a cesarean delivery, which Dara and James refused at the time it was offered. If they had agreed to a cesarean delivery at that time, Dr. Bowen would have been required to inform them of any risks attendant to that type of delivery. Failing to disclose the need for a cesarean delivery, while not amounting to an informed-consent claim, may have been considered negligence, and the jury was able to consider this issue under the O'Loughlins' medical-malpractice claim, which relied on the same facts as the lack-of-informed-consent claim.

{¶23} Likewise, the allegation that Dr. Bowen failed to disclose the risks of continuing with a vaginal delivery does not support a lack-of-informed-consent claim, because Dr. Bowen did not recommend continuing with the vaginal delivery over other options, such as a cesarean delivery. But the fact that he allowed Dara to continue to attempt to vaginally deliver for a while could have been considered negligence, and again, the jury was able to consider this theory under the O'Loughlins' medical-malpractice claim.

{¶24} Accordingly, because there was no treatment recommended by Dr. Bowen that Dara and James agreed to undertake, a claim of lack of informed consent was not tenable, and the trial court did not err in refusing to include a jury instruction on that claim. The fifth assignment of error is overruled.

## Jury Instructions

{¶25} In their final assignment of error, the O'Loughlins maintain that the court gave erroneous and inapplicable jury instructions. They contend these erroneous instructions misled the jury and warrant a new trial.

{¶26} "A trial court has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial. It is the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." *Renfro v. Black*, 52 Ohio St.3d 27, 30, 556 N.E.2d 150 (1990). "A trial court must give a jury instruction that correctly and completely states the law. An inadequate jury instruction that misleads the jury constitutes reversible error." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170 ¶ 32.

{¶27} The O'Loughlins first challenge the instruction involving the foreseeability of Emmet's injury as it relates to the standard of care Dr. Bowen and the nurses owed to Dara and Emmet. In order to prove a claim of medical malpractice, the plaintiff must establish (1) the standard of care, as generally shown through expert testimony; (2) the failure of defendant to meet the requisite standard of care; and (3) a direct causal connection between the medically negligent act and the injury sustained. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976). The existence of a duty, or standard of care, depends on the foreseeability of the

injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). In order to determine what is foreseeable, a court must determine "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.* at 77.

{¶28} Here, the trial court instructed the jury that:

> In deciding whether reasonable care was used, you will consider whether the defendant or defendants ought to have foreseen under the circumstances that the likely result of an act or failure to act would cause some injury.

> The test for foreseeability is not whether the defendant or defendants should have foreseen the injury exactly as it happened to plaintiffs. The test is whether, under all circumstances, a reasonably careful person would have anticipated that an act or failure to act would likely result in some injury.

{¶29} This jury instruction mimics the language given by the Supreme Court and used in pattern instructions from the Ohio Jury Instructions. *See Menifee* at 77; *Miller v. Defiance Regional Med. Ctr.*, Lucas App. No. L-06-111, 2007-Ohio-7101. Further, multiple appellate districts in Ohio have upheld the use of a similar foreseeability instruction in medical-malpractice cases. *Ratliff v. Mikol*, 8th Dist. Cuyahoga No. 94930, 2011-Ohio-2147 (foreseeability instruction proper in medical-malpractice case alleging that doctor's failure to order a cesarean section in light of fetal distress signs caused brain injury at birth); *Cox v. MetroHealth Med. Ctr. Bd. of*

*Trustees*, 2012-Ohio-2383, 971 N.E.2d 1026 (8th Dist.); *Clements v. Lima Mem. Hosp.*, 3d Dist. Allen No. 1-09-24, 2010-Ohio-602; *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450; *Joiner v. Simon*, 1st Dist. Hamilton No. C-050718, 2007-Ohio-425, ¶ 59-61; *Miller, supra.*

{¶30} The issue of foreseeability was a dispositive issue in this case. The O'Loughlins presented testimony from their experts that under the circumstances presented, especially during the last four hours of Dara's labor, Dr. Bowen and the nurses should have seen or known that the baby's condition was deteriorating and that an injury could result. Based on the foregoing, we cannot say that the trial court abused its discretion in including an instruction on foreseeability.

{¶31} The O'Loughlins cite to *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2012-Ohio-5154, 985 N.E.2d 548 (9th Dist.), *discretionary appeal allowed*, 134 Ohio St.3d 1484, 2013-Ohio-902, 984 N.E.2d 28, which held that the trial court had erred by including the foreseeability instruction in that medical-malpractice case. But that case is distinguishable because the trial court in *Cromer*, instead of instructing the jury to consider whether the doctor should have foreseen that his act would cause "some injury," instructed the jury to consider whether the doctor should have foreseen that his actions or lack thereof would "cause [Cromer's] death." Ohio law is clear that doctors only have to foresee that their actions or lack thereof could have caused any injury, not a specific injury. Thus, the jury instruction in *Cromer* was an incorrect statement of the law.

{¶32} Next, the O'Loughlins contend that the jury instruction in this case was an incorrect statement of the law. They maintain that including the word "likely" in the foreseeability instruction effectively required them to prove that foreseeable

13

harm was "probable" (more than 50 percent). But the Eighth Appellate District has repeatedly rejected this same argument in medical-malpractice cases. *See Cox*, 2012-Ohio-2383, 971 N.E.2d 1026; *Ratliff*, 8th Dist. Cuyahoga No. 94930, 2011-Ohio-2147, at ¶ 10; *Peffer*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, at ¶ 44-57.

{¶33} Because the language used by the trial court here to instruct the jury on foreseeability has been approved by the Ohio Supreme Court, we cannot say that the trial court erred in its statement of the law, regardless of whether there is merit to the O'Loughlins argument. *See Menifee,* 15 Ohio St.3d at 77, 472 N.E.2d 707.

{¶34} Finally, the O'Loughlins maintain that the trial court erred by including a "different methods" instruction in the jury charge. We disagree. The defendants' experts testified that Dr. Bowen had alternative methods of care to choose from in treating Dara, ranging from an emergency cesarean section or vaginal delivery, intermittent fetal monitoring or continuous monitoring, or vacuum assisted delivery, as opposed to forceps delivery. The nurses also had different options for treatment, including holding transducers in place by hand or applying them with belts, performing intrauterine resuscitation or not, and using the uterine-contraction monitor or not. Because there was evidence presented to the jury that different methods could have been utilized by the medical professionals, a "different methods" instruction was proper, and the trial court did not abuse its discretion in including such an instruction.

{¶35} The sixth assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **HENDON, J.,** concur.

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.